1998 ND 216

**STATE of North Dakota, Plaintiff and Appellee**

v.

**Douglas Joseph LANCTOT, Defendant and Appellant.**

**Criminal No. 980218**

Supreme Court of North Dakota.

Dec. 22, 1998.

Mark R. Boening, Assistant State's Attorney, Fargo, for plaintiff and appellee.

Richard E. Edinger, Moorhead, for defendant and appellant.

Kapsner, Justice.

[¶ 1] Douglas Joseph Lanctot appealed from a conviction for unlawful use of a license entered upon a conditional plea of guilty. We hold a police officer's warrantless search of Lanctot's billfold was a valid search incident to a custodial arrest. We therefore affirm the conviction.

[¶ 2] At approximately 5:30 p.m. on January 26, 1998, two West Fargo police officers went to Pappy's Cars and Auto Repair to execute a warrant authorizing the arrest of Lanctot for a probation violation. After entering Pappy's, the officers asked an employee if Lanctot was there. The employee identified Lanctot, who was in his office. Lanctot met the two officers at his office door and identified himself. The officers arrested Lanctot while he was standing in his office by the short edge of a rectangular three by six foot desk. Lanctot's billfold was on the other end of his desk, approximately six feet from him. According to Lanctot, when the officers arrested him, he was standing "next to the edge" of the desk with one officer on each side of him, and he would have had "to push one officer all the way" to get to his billfold. One of the officers took the billfold off the desk, and without a search warrant or Lanctot's consent, searched the billfold and found two fictitious driver's licenses.

[¶ 3] Lanctot was charged with unlawful use of a fictitious license in violation of

N.D.C.C. § 39–06–40(1), and he moved to suppress the evidence seized from his billfold. At the suppression hearing, Lanctot testified about the circumstances of the arrest. Although the State subpoenaed the two arresting officers, they were on vacation and did not appear at the hearing. The State initially asked for a continuance, but ultimately stipulated Lanctot's testimony accurately described the arrest.

[¶ 4] The trial court denied Lanctot's motion to suppress, ruling the officers searched Lanctot's billfold incident to a lawful arrest, and in any event, the officers would have inevitably discovered the fictitious licenses during an inventory search of the billfold. Lanctot entered a conditional plea of guilty under N.D.R.Crim.P. 11(a)(2), and he appealed, contending the trial court erred in denying his motion to suppress.

[¶ 5] The Fourth Amendment of the United States Constitution, applicable to the states through the Fourteenth Amendment, and Art. I, § 8 of the North Dakota Constitution, protect individuals from unreasonable searches and seizures.[1] *State v. Boline*, 1998 ND 67, ¶ 19, 575 N.W.2d 906. A warrantless search is unreasonable under the Fourth Amendment unless it falls within a recognized exception to the requirement for a search warrant. *State v. Kunkel*, 455 N.W.2d 208, 209–10 (N.D.1990). A search incident to a valid custodial arrest is an exception to the warrant requirement. *State v. Phelps*, 286 N.W.2d 472, 475 (N.D.1979).

[¶ 6] In *Chimel v. California*, 395 U.S. 752, 762–63, 89 S.Ct. 2034, 23 L.Ed.2d 685 (1969), the United States Supreme Court outlined the scope of a search incident to a valid custodial arrest:

> When an arrest is made, it is reasonable for the arresting officer to search the person arrested in order to remove any weapons that the latter might seek to use in order to resist arrest or effect his escape. Otherwise, the officer's safety might well be endangered, and the arrest itself frustrated. In addition, it is entirely reasonable for the arresting officer to search for and seize any evidence on the arrestee's person in order to prevent its concealment or destruction. And the area into which an arrestee might reach in order to grab a weapon or evidentiary items must, of course, be governed by a like rule. A gun on a table or in a drawer in front of one who is arrested can be as dangerous to the arresting officer as one concealed in the clothing of the person arrested. There is ample justification, therefore, for a search of the arrestee's person and the area "within his immediate control"—construing that phrase to mean the area from within which he might gain possession of a weapon or destructible evidence.

[¶ 7] Lanctot contends the State failed to meet its burden of showing the warrantless search of his billfold fell within the *Chimel* radius, because the arresting officers did not testify at the suppression hearing and the State did not present any evidence establishing his billfold could contain a weapon or evidence.

[¶ 8] Defendants alleging a violation of their Fourth Amendment rights have the initial burden of establishing a prima facie illegal search. *City of Fargo v. Sivertson*, 1997 ND 204, ¶ 6, 571 N.W.2d 137. After a defendant has established a prima facie case, however, the burden of persuasion shifts to the State to show a warrantless search falls within an exception to the warrant requirement. *See State v. Avila*, 1997 ND 142, ¶ 16, 566 N.W.2d 410.

[¶ 9] We reject Lanctot's argument the State was required to introduce testimony from the arresting officers to satisfy its burden of showing this warrantless search fit within an exception to the warrant requirement. The State may satisfy its burden of persuasion by presenting testimony from the arresting officers; it is not required to do so. The issue is not whether the State presented testimony of the arresting officers, but whether the evidence presented to the trial court demonstrated this warrantless search fell within an exception to the warrant re-

1. Although Lanctot's appellate brief cites both the federal and state constitutional provisions, he has not marshaled a separate argument under the state provision, and we treat the federal and state provisions synonymously. *See State v. Kunkel*, 455 N.W.2d 208, 209 n. 2 (N.D.1990).

quirement. The State's burden is satisfied if the evidence presented to the trial court demonstrates the existence of an exception to the warrant requirement. Here, the State stipulated Lanctot's testimony described the circumstances of the arrest, and the issue is not whether the State failed to present the testimony of the arresting officers, but whether the circumstances of the arrest satisfied the State's burden of showing the police conducted a warrantless search of an area within Lanctot's "immediate control" under *Chimel*.

[¶ 10] Our decisions involving the scope of a warrantless search incident to an arrest usually have involved the search of an automobile. *See State v. Erbele*, 554 N.W.2d 448, 451 (N.D.1996) (upholding warrantless search of passenger compartment of arrestee's vehicle incident to lawful arrest); *State v. Gilberts*, 497 N.W.2d 93, 99 (N.D.1993) (invalidating warrantless search of coat of "nonarrested occupant" of automobile after driver lawfully arrested); *Kunkel*, 455 N.W.2d at 210 (invalidating warrantless search of van which was not contemporaneous in time or place with arrest); *State v. Hensel*, 417 N.W.2d 849, 853 (N.D.1988) (following *New York v. Belton*, 453 U.S. 454, 101 S.Ct. 2860, 69 L.Ed.2d 768 (1981) and upholding warrantless search of passenger compartment of automobile incident to valid arrest). We have not specifically defined the limits of the area within an arrestee's immediate control for warrantless searches outside the automobile context. *See Phelps*, 286 N.W.2d at 475–76 (invalidating warrantless seizure which was not incident to valid arrest); *State v. Page*, 277 N.W.2d 112, 119 (N.D.1979) (upholding warrantless search incident to valid custodial arrest where seized items were within "immediate area" of arrestees).

[¶ 11] Decisions from federal courts suggest there is no mechanical formula for defining the area within an arrestee's immediate control, and the resolution of the issue depends on the facts of each case. *See United States v. Blue*, 78 F.3d 56, 60 (2d Cir.1996) (invalidating warrantless search of bed within two feet of arrestees who were on floor with hands cuffed behind back and guarded by police officers); *United States v. Johnson*, 16 F.3d 69, 73, *on reh'g*, 18 F.3d 293, 295 (5th Cir.1994) (invalidating warrantless search of briefcase approximately six to eight feet from arrestee who was not handcuffed and was seated at desk with one officer behind him and three other officers in room); *United States v. Miller*, 946 F.2d 1344, 1346 (8th Cir.1991) (upholding warrantless search of nightstand and bed four to four and one-half feet from arrestee); *United States v. McConney*, 728 F.2d 1195, 1207 (9th Cir.1984) (upholding warrantless seizure of gun in sofa within two feet of arrestee who was not handcuffed); *United States v. Mason*, 523 F.2d 1122, 1125–26 (D.C.Cir.1975) (upholding warrantless search of partially opened suitcase within three to four feet of handcuffed arrestee); *United States v. Weaklem*, 517 F.2d 70, 72–3 (9th Cir.1975) (upholding warrantless seizure of cocaine from cabinet within two to four feet from arrestee who was not handcuffed and was lying on floor); *United States v. Becker*, 485 F.2d 51, 55 (6th Cir. 1973) (upholding warrantless search of closed drawer in chest three to five feet from arrestee); *United States v. Shye*, 473 F.2d 1061, 1066 (6th Cir.1973) (invalidating warrantless seizure of money found behind water heater in closet about four feet from arrestee where officer stood between arrestee and closet and "had the situation completely under control"); *United States v. Wysocki*, 457 F.2d 1155, 1160 (5th Cir.1972) (upholding warrantless seizure of box within six feet of arrestee who had known record as armed robber); *United States v. MacDonald*, 455 F.2d 1259, 1264 (1st Cir.1972) (upholding warrantless search of jar within a "few feet" of arrestee). *See generally* 3 LaFave, Search and Seizure, § 6.3(c) (3rd ed.1996).

[¶ 12] Those authorities illustrate that federal courts have considered several factors in deciding whether the area of a warrantless search is within the arrestee's immediate control: (1) the number of persons arrested; (2) the number of officers present and their physical location with regard to the arrestee and the place searched; (3) the use of handcuffs on the arrestee and the display of weapons by the officers; and (4) the distance between the arrestee and the place searched. *See McConney*, 728 F.2d at 1207. *See generally* 3 LaFave, at § 6.3(c).

[¶ 13] In assessing whether an officer correctly has gauged the area within an arrestee's immediate control, we also keep in mind an admonition in *United States v. Parra*, 2 F.3d 1058, 1066 (10th Cir.1993) *quoting United States v. Lyons*, 706 F.2d 321, 330 (D.C.Cir.1983):

> [c]ustodial arrests are often dangerous; the police must act decisively and cannot be expected to make punctilious judgments regarding what is within and what is just beyond the arrestee's grasp. Thus, searches have sometimes been upheld even when hindsight might suggest that the likelihood of the defendant reaching the area in question was slight.

[¶ 14] Here, two officers arrested Lanctot. There was no evidence the officers handcuffed Lanctot, or displayed any weapons during the arrest. According to Lanctot, when he was arrested he was standing "next to the [short] edge" of a rectangular three by six foot desk with one officer on each side of him and his billfold on the other side of the desk, approximately six feet from him. Lanctot also testified one officer was "between" him and the billfold. Lanctot's testimony does not establish unequivocally whether the officer was standing between Lanctot and the desk, or standing next to Lanctot by the desk so Lanctot would have had to walk around the desk and the officer to get the billfold. At the suppression hearing, Lanctot demonstrated the relative position of the officers during the arrest, and the trial court found the billfold was within six feet of Lanctot and was within his reaching radius. The trial court also found the officer took the billfold off the desk and searched it after Lanctot indicated it belonged to him.

[¶ 15] We will not reverse a trial court's disposition of a suppression motion if, after resolving conflicts in the testimony in favor of affirmance, there is sufficient competent evidence fairly capable of supporting the court's decision. *State v. Olson*, 1998 ND 41,

¶ 10, 575 N.W.2d 649. The evidence supports an inference the officers' physical location would not have prevented Lanctot from accessing the billfold by reaching directly across the desk. After hearing Lanctot's testimony and viewing his demonstration, the trial court was in a better position than this Court, on a cold record, to evaluate the physical location of the officers vis-a-vis Lanctot and his billfold. We resolve Lanctot's testimony about the officers' physical location in favor of affirmance.

[¶ 16] Although a trial court may not imagine facts not in evidence, *see State v. Glaesman*, 545 N.W.2d 178, 182 n. 1 (N.D.1996), we agree with the trial court's common-sense observation "it is well-known ... that billfolds can contain razor blades, they can contain push knives, and they could contain another device that the Court is aware of that actually is to keep in your billfold as a weapon." The *Chimel* rationale also encompasses the "concealment or destruction" of evidence, *Chimel*, 395 U.S. at 763, 89 S.Ct. 2034, and we reject Lanctot's argument the State failed to show this warrantless search fell within the *Chimel* radius, because the State presented no evidence Lanctot's billfold could have contained a weapon or evidence.

[¶ 17] Under the circumstances of this case, we decline to second guess the arresting officers' exercise of judgment regarding areas that may have been within or just beyond Lanctot's grasp. We conclude Lanctot's billfold, which was within a six foot reaching distance across the desk, was within the area of Lanctot's immediate control. We hold there is sufficient competent evidence supporting the trial court's denial of Lanctot's motion to suppress the contents of his billfold, and the court's decision Lanctot's billfold was in an area within his immediate control under *Chimel* is not contrary to the manifest weight of the evidence.[2]

[¶ 18] We therefore affirm the conviction.

2. At oral argument to this Court, the State conceded it had presented no evidence of a booking policy that would have established the contents of Lanctot's billfold would have been inevitably discovered during an inventory search of his billfold. *See Schwindt v. State*, 510 N.W.2d 114, 117–18 (N.D.1994) (upholding inventory search

of billfold of person held for detoxification); *State v. Lind*, 322 N.W.2d 826, 835–36 (N.D. 1982) (upholding inventory search of arrestee's billfold); *State v. Gelvin*, 318 N.W.2d 302, 307 (N.D.1982) (upholding inventory search of billfold of person held for detoxification).

[¶ 19] VANDE WALLE, C.J., and SANDSTROM, MARING, and NEUMANN, JJ., concur.

