2003 ND 99

**STATE of North Dakota, Plaintiff and Appellant,**

v.

**Jessica Lynn TOGNOTTI, Defendant and Appellee.**

No. 20030015.

Supreme Court of North Dakota.

June 17, 2003.

Mark Rainer Boening, Assistant State's Attorney, Fargo, ND, for plaintiff and appellant.

Monty Grant Mertz, Fargo, ND, for defendant and appellee.

MARING, Justice.

[¶ 1] The State appealed from an order suppressing evidence in the prosecution of Jessica Lynn Tognotti for possession of drug paraphernalia. We hold that, incident to a valid arrest of an occupant in a vehicle, the arresting officer can search the contents of a nonarrested occupant's purse, if the purse was in the vehicle at the time of the arrest and the occupant was not instructed by the officer to leave it in the vehicle upon exiting. We overrule *State v. Gilberts*, 497 N.W.2d 93, 99 (N.D. 1993), to the extent its rationale is contrary to our holding in this case, reverse the order suppressing evidence, and remand for further proceedings.

I

[¶ 2] The facts relevant to the suppression motion are undisputed, and the parties stipulated that Tognotti's affidavit and the arresting officer's report constitute the record evidence on the suppression motion.

[¶ 3] While patrolling in Fargo, at approximately 10:15 p.m., on April 24, 2002, Officer Todd Wahl observed a vehicle being driven with its headlights off. Tognotti was driving the vehicle, accompanied by her infant daughter, her husband, and a friend, Wendell Decoteau. After the officer stopped the vehicle, he checked the occupants' identifications, and then returned to his police car to check for outstanding arrest warrants. The officer discovered an outstanding arrest warrant on Decoteau for having failed to pay child

support. The officer arrested Decoteau and placed him in his police car. After requesting that Tognotti and her husband exit their vehicle, the officer conducted a search of the vehicle's interior. The officer searched Tognotti's purse, which was lying on the driver's side of the front seat. In the purse, he discovered a "sunglass case" with drug paraphernalia inside it, including a syringe, a spoon, three ends of what appeared to be a tied baggie, and a small amount of what appeared to be methamphetamine residue. The officer arrested Tognotti, and she was charged with class C felony possession of drug paraphernalia.

[¶ 4] Tognotti filed a motion to suppress the evidence the officer discovered during the search of her purse, on the grounds the search violated her Fourth Amendment constitutional rights against unreasonable search and seizure. After a hearing, the trial court concluded the search fell within the purview of this Court's decision in *Gilberts*, 497 N.W.2d at 99, and granted Tognotti's motion to suppress.

## II

### A.

▆ [¶ 5] The State appealed, as authorized under N.D.C.C. § 29–28–07(5), from the order granting the motion to suppress. When reviewing a trial court's ruling on a motion to suppress, we defer to the trial court's findings of fact and resolve conflicts and testimony in favor of affirmance. *State v. Haverluk*, 2000 ND 178, ¶ 7, 617 N.W.2d 652. After resolving conflicting evidence in favor of affirmance, we affirm the trial court's decision unless there is insufficient competent evidence to support the decision or the decision goes against the manifest weight of the evidence. *Id.* Questions of law are fully re-

viewable. *State v. Gregg*, 2000 ND 154, ¶ 20, 615 N.W.2d 515.

[¶ 6] The trial court concluded the officer's search of Tognotti's purse following Decoteau's arrest was an improper search incident to the arrest which violated Tognotti's constitutional rights. We agree with the trial court that the circumstances in this case are not legally distinguishable from the facts in *Gilberts*. However, in view of the United States Supreme Court decision in *Wyoming v. ·Houghton*, 526 U.S. 295, 302, 119 S.Ct. 1297, 143 L.Ed.2d 408 (1999), and subsequent cases from other jurisdictions applying the rationale of that decision to searches incident to arrest, we believe that it is appropriate at this time to reexamine *Gilberts* and to adopt a bright-line rule for searching containers found in a vehicle which is searched incident to an arrest.

### B.

▆ [¶ 7] The Fourth Amendment of the United States Constitution, applicable to the states through the Fourteenth Amendment, protects individuals from unreasonable searches and seizures. *State v. Lanctot*, 1998 ND 216, ¶ 5, 587 N.W.2d 568. A warrantless search is unreasonable under the Fourth Amendment unless it falls within a recognized exception to the requirement for a search warrant. *Id.* A search incident to a valid custodial arrest is an exception to the warrant requirement. *Id.*

▆ [¶ 8] The United States Supreme Court defined the scope of a search incident to arrest in *Chimel v. California*, 395 U.S. 752, 763, 89 S.Ct. 2034, 23 L.Ed.2d 685 (1969), holding that an officer making a lawful custodial arrest may search the arrestee and the area within the arrestee's immediate control. In *New York v. Belton*, 453 U.S. 454, 457–61, 101 S.Ct. 2860, 69 L.Ed.2d 768 (1981) (citations omitted),

the Court explained the applicability of the *Chimel* rule to automobile searches:

> Specifically, the Court held in *Chimel v. California*, 395 U.S. 752, 89 S.Ct. 2034, 23 L.Ed.2d 685, that a lawful custodial arrest creates a situation which justifies the contemporaneous search without a warrant of the person arrested and of the immediately surrounding area. Such searches have long been considered valid because of the need "to remove any weapons that [the arrestee] might seek to use in order to resist arrest or effect his escape" and the need to prevent the concealment or destruction of evidence.
>
> . . . .
>
> In short, "[a] single, familiar standard is essential to guide police officers, who have only limited time and expertise to reflect on and balance the social and individual interests involved in the specific circumstances they confront."
>
> . . . .
>
> But no straightforward rule has emerged from the litigated cases respecting the question involved here—the question of the proper scope of a search of the interior of an automobile incident to a lawful custodial arrest of its occupants.
>
> . . . .
>
> [W]e hold that when a policeman has made a lawful custodial arrest of the occupant of an automobile, he may, as a contemporaneous incident of that arrest, search the passenger compartment of that automobile.

It follows from this conclusion that the police may also examine the contents of any containers found within the passenger compartment, for if the passenger compartment is within reach of the arrestee, so also will containers in it be within his reach. Such a container may, of course, be searched whether it is open or closed, since the justification for the search is not that the arrestee has no privacy interest in the container, but that the lawful custodial arrest justifies the infringement of any privacy interest the arrestee may have.

[¶ 9] The court in *Belton* established a bright-line rule for police searches of the interior of a vehicle when the occupants of the vehicle have been arrested. In *Belton,* however, all of the occupants of the vehicle had been arrested prior to the officer's search of the vehicle's interior. A slightly different factual situation was presented to this Court in *Gilberts,* 497 N.W.2d at 94–95, wherein the officer arrested the driver of a vehicle and then proceeded to search the *interior of the vehicle, including the* jacket of a nonarrested occupant in the vehicle. This Court concluded the officer's search of the jacket violated the passenger's constitutional rights:

> When [the officer] reached into Gilberts's jacket pocket he knew that the jacket belonged to Gilberts, not the arrested driver. Furthermore, [the officer] had seen that the jacket had been "draped down around [Gilberts's] back" and that Gilberts was "kind of sitting on it." Under these circumstances, we hold that the *Belton* rationale does not justify [the officer's] search of Gilberts's jacket. Standing alone, the driver's arrest was an inadequate ground for this intrusion upon Gilberts's constitutional rights against unreasonable search and seizure of his person and property.

*Gilberts,* 497 N.W.2d at 97. The *Gilberts* decision was authored by Justice Herbert Meschke, with Justice Beryl Levine concurring. Chief Justice Vande Walle filed a special concurring opinion, joined by Surrogate Judge Ralph J. Erickstad, in which he stated,

So much for the "bright-line" test for determining the scope of a search of an automobile pursuant to a lawful custodial arrest as established by *New York v. Belton.* The *Belton* decision was prompted by the need to establish straight forward and workable rules to apply to the scope of a search of an automobile after the arrest of the occupant.

. . . .

Because the jacket, although not actually worn by Gilberts, was "draped around his neck," I believe this is a close case. Because of these circumstances, but recognizing, as I do, that it does blur the "bright-line" test of *Belton,* I reluctantly concur in the result reached by the majority.

*Gilberts,* 497 N.W.2d at 99 (citation omitted).

[¶ 10]   Since the *Gilberts* decision, this Court has continued to recognize the *Belton* rule that once a person has been lawfully arrested an officer may search the passenger compartment of the arrestee's vehicle without a warrant. *See, e.g., State v. Erbele,* 554 N.W.2d 448, 451 (N.D.1996). In *State v. Wanzek,* 1999 ND 163, ¶ 15, 598 N.W.2d 811 (citations omitted), this Court held that the *Belton* rationale authorizes an officer to search a vehicle incident to arrest, irrespective of whether the arrest occurs inside or nearby the stopped vehicle:

We are not persuaded by the line of cases which hold an arrestee is an occupant only when arrested inside the vehicle or where the police initiate contact with the arrestee before the arrestee exits the vehicle. In our view, these decisions undermine the purposes behind the "bright-line" rule established in *Belton.* The purposes behind *Belton* were two-fold: to create a single familiar standard to guide police officers in automobile searches and to eliminate the need for litigation in every case to determine whether the passenger compartment of the vehicle is within the scope of a search incident to arrest. Furthermore, these decisions raise grave public policy issues because they create serious concerns for the safety of officers and others. By drawing a distinction between an occupant and a recent occupant of a vehicle, we would encourage individuals to avoid lawful searches of their vehicles by rapidly exiting or moving away from the vehicle as officers approached. Police officers should not have to race from their vehicles to the arrestee's vehicle to prevent the arrestee from getting out of the vehicle in order to conduct a valid search. If *Belton* is read to preclude searches where police contact occurs after the suspect exits the vehicle, suspects could conceal evidence and weapons by merely stepping outside the vehicle whenever they saw an officer approaching.

Recognizing the *Belton* rule was designed to provide a bright line to guide officers in performing vehicle searches incident to a lawful arrest, this Court in *Wanzek* refused to impose a difficult to administer limitation upon such searches.

[¶ 11]   Upon reexamining our rationale in *Gilberts,* we conclude that imposing a restriction on searches of a vehicle incident to arrest based upon ownership of containers or other articles inside the vehicle unnecessarily dims the bright-line rule as announced by *Belton.* The need to maintain a clear and workable rule for police searches is evident from the reasoning of the United States Supreme Court in *Wyoming v. Houghton,* 526 U.S. 295, 302–06, 119 S.Ct. 1297, 143 L.Ed.2d 408 (1999), wherein the Court concluded that a police officer can, consistent with the Fourth Amendment, search a passenger's personal

belongings inside a vehicle when the officer has probable cause to believe the vehicle contains contraband:

> When there is probable cause to search for contraband in a car, it is reasonable for police officers—like customs officials in the founding era—to examine packages and containers without a showing of individualized probable cause for each one. A passenger's personal belongings, just like the driver's belongings or containers attached to the car like a glove compartment, are "in" the car, and the officer has probable cause to search for contraband *in* the car.
>
> . . . .
>
> Passengers, no less than drivers, possess a reduced expectation of privacy with regard to the property that they transport in cars, which "trave[l] public thoroughfares."
>
> . . . .
>
> Effective law enforcement would be appreciably impaired without the ability to search a passenger's personal belongings when there is reason to believe contraband or evidence of criminal wrongdoing is hidden in the car. As in all car-search cases, the "ready mobility" of an automobile creates a risk that the evidence or contraband will be permanently lost while a warrant is obtained.
>
> . . . .
>
> To require that the investigating officer have positive reason to believe that the passenger and driver were engaged in a common enterprise, or positive reason to believe that the driver had time and occasion to conceal the item in the passenger's belongings, surreptitiously or with friendly permission, is to impose requirements so seldom met that a "passenger's property" rule would dramatically reduce the ability to find and seize contraband and evidence of crime.... But once a "passenger's property" ex-

ception to car searches became widely known, one would expect passenger-confederates to claim everything as their own. And one would anticipate a bog of litigation—in the form of both civil lawsuits and motions to suppress in criminal trials—involving such questions as whether the officer should have believed a passenger's claim of ownership, whether he should have inferred ownership from various objective factors, whether he had probable cause to believe that the passenger was a confederate, or to believe that the driver might have introduced the contraband into the package with or without the passenger's knowledge. When balancing the competing interests, our determinations of "reasonableness" under the Fourth Amendment must take account of these practical realities. We think they militate in favor of the needs of law enforcement, and against a personal-privacy interest that is ordinarily weak.

Later decisions in other jurisdictions have applied the rationale of the United States Supreme Court in *Houghton* to searches incident to arrest. *State v. Ray*, 260 Neb. 868, 620 N.W.2d 83, 89 (2000); *State v. Lopez*, 198 Ariz. 420, 10 P.3d 1207, 1210–11 (App.2000); *see also State v. Matejka*, 241 Wis.2d 52, 621 N.W.2d 891, 896 (2001) (extending the *Houghton* rationale to third party consent search of a passenger's jacket in an automobile).

[¶ 12] The Supreme Court of Nebraska in *State v. Ray*, 260 Neb. 868, 620 N.W.2d 83, 89 (2000), applied the *Houghton* rationale to a vehicle search incident to arrest:

> We agree that *Belton* established a bright-line rule which permits a warrantless search of the passenger compartment of a vehicle and containers situated therein incident to the lawful arrest of any occupant of the vehicle. We further agree that the reasoning of

*Wyoming v. Houghton,* 526 U.S. 295, 119 S.Ct. 1297, 143 L.Ed.2d 408 (1999), leads to the logical conclusion that the scope of such search extends to items of property within the passenger compartment at the time of the search belonging to an occupant of the vehicle who was not arrested.

*See also State v. Steele,* 613 N.W.2d 825, 830 (S.D.2000) (following the reasoning in *Houghton,* the court concluded that upon arresting the driver of a vehicle for probation violations and securing him in a patrol car, officers were justified in searching a passenger's purse which was observed on the front seat of the vehicle at the time of the arrest).

[¶ 13] Courts in other jurisdictions, although not relying upon the *Houghton* decision, have concluded that the *Belton* bright-line rule should be applied to allow an officer to search containers belonging to nonarrested passengers when the officer is conducting a vehicle search incident to the arrest of another occupant. *See State v. Parker,* 88 Wash.App. 273, 944 P.2d 1081, 1085 (1997); *People v. McMillon,* 892 P.2d 879, 884 (Colo.1995); *People v. Mitchell,* 36 Cal.App.4th 672, 42 Cal.Rptr.2d 537, 540 (1995); *State v. Moore,* 619 So.2d 376, 377 (Fla.App.1993). These cases are persuasive.

[¶ 14] We hold an arresting officer's search of a purse belonging to a nonarrested occupant which is voluntarily left in the vehicle is a valid search incident to the arrest of a passenger in the vehicle. We overrule our decision in *Gilberts* to the extent it is contrary to our holding in this case.

### III

[¶ 15] Here, Officer Wahl examined the contents of Tognotti's purse, which had been lying beside her on the seat in the vehicle, after arresting another occupant of the vehicle. At the suppression hearing, although the parties agreed the facts were not in dispute, the trial judge inquired "I'm interested—if the passenger had taken the purse with her ... what if the [o]fficer told her to leave her purse?" Tognotti's attorney responded that his client was present and would testify that the officer told her to leave her purse in the vehicle. The judge stated he did not think that fact was going to "turn this case," and no testimony was taken regarding whether Tognotti voluntarily left her purse in the vehicle when she exited or whether the officer instructed her to leave the purse in the vehicle. We conclude this is a relevant fact which could affect the outcome of the motion to suppress.

[¶ 16] There is no automatic search rule for companions of an arrestee. *State v. Heitzmann,* 2001 ND 136, ¶ 11, 632 N.W.2d 1. A law enforcement officer may conduct a frisk or a pat down search of a person only when the officer possesses an articulable suspicion the individual is armed and dangerous. *Id.* Although the bright-line rule in *Belton* allows an officer to search the interior of a vehicle upon arresting an occupant of the vehicle, *Belton* does not authorize the search of another occupant of the vehicle merely because the occupant was there when the arrest occurred, and *Belton* does not authorize a search of a nonarrested passenger based solely on the arrest of the driver or another occupant of the vehicle. *State v. Newsom,* 132 Idaho 698, 979 P.2d 100, 102 (1998). Consequently, if Tognotti was standing outside the vehicle with her purse when her passenger, Decoteau, was arrested, the officer could not conduct a pat down of Tognotti or search Tognotti's person or purse without probable cause that she was involved in criminal activity or an articulable suspicion that she was armed

and presently dangerous. *See State v. Grant,* 361 N.W.2d 243, 247 (N.D.1985).

[¶ 17] Other courts have held that an officer cannot order a nonarrested occupant of a vehicle to leave a purse inside the vehicle and then search it incident to the arrest of another occupant of the vehicle. *State v. Boyd,* 275 Kan. 271, 64 P.3d 419, 427 (2003); *State v. Newsom,* 132 Idaho 698, 979 P.2d 100, 102 (1998); *State v. Seitz,* 86 Wash.App. 865, 941 P.2d 5, 8 (1997). *But see State v. Steele,* 613 N.W.2d 825, 830 (S.D.2000) (holding officer's search of purse after requesting nonarrested occupant to leave the purse in the vehicle comports with federal constitutional protections). Also, Justice Breyer in his concurring opinion in *Houghton,* 526 U.S. at 308, 119 S.Ct. 1297 (citations omitted), emphasized that a purse is a special personal container and a search of it very nearly involves the same intrusion as the search of the person herself:

> Purses are special containers. They are repositories of especially personal items that people generally like to keep with them at all times. So I am tempted to say that a search of a purse involves an intrusion so similar to a search of one's person that the same rule should govern both. However, given this Court's prior cases, I cannot argue that the fact that the container was a purse *automatically* makes a legal difference, for the Court has warned against trying to make that kind of distinction. But I can say that it would matter if a woman's purse, like a man's billfold, were attached to her person. It might then amount to a kind of "outer clothing," which under the Court's cases would properly receive increased protection.

[¶ 18] Also persuasive is the rationale of the Kansas Supreme Court in *Boyd,* 64 P.3d at 427, that an officer infringes upon Fourth Amendment rights if, upon ordering a woman from a vehicle, he instructs her to leave her purse in the vehicle and then attempts to conduct a search of the purse as part of a search of the vehicle:

> Here the officer found no drugs on Lassiter and had no probable cause to believe illegal drugs were in the car when Boyd was told by the officer to get out of the car. Thus, at that point, the officer did not have probable cause to search Boyd or her purse. The officer had no right to order her to leave her purse in the car. The State conceded at oral argument that if Boyd would have been allowed to take her purse with her the officer could not have lawfully searched her or her purse. If we hold an officer can lawfully order a passenger to leave her purse in the car and thereby make it subject to search, then what prevents the officer from ordering the passenger to remain in the car, thus subjecting her to be subsequently searched along with the car. The protection of the Fourth Amendment cannot be defined at the discretion of a law enforcement officer. The heightened privacy interest and expectation in the present case is sufficient to tip the balance from governmental interest in effective law enforcement, which outweighed the privacy interest in *Houghton* where the purse was voluntarily left in the back seat unclaimed. We hold that where a passenger is told by a police officer to get out of a lawfully stopped vehicle and in response to the officer's order to leave her purse in the vehicle, puts the purse down and exits the vehicle, a subsequent search of the purse as part of a search of the vehicle violates the passenger's Fourth Amendment right against unreasonable search and seizure.

[¶ 19] Similarly, the Supreme Court of Idaho in *Newsom,* 979 P.2d at 102, held

that when a nonarrested passenger exits a vehicle which has been properly stopped by law enforcement, the passenger is entitled to take her purse with her and is not required by *Belton* to leave it in the vehicle for the officer to search. Thus, "the police cannot create a right to search a container by placing it within the passenger compartment of a car or by ordering someone else to place it there for them." *State v. Holland,* 135 Idaho 159, 15 P.3d 1167, 1171 (2000); *see also Seitz*, 941 P.2d at 8 (a valid arrest of a driver does not justify the search of a passenger's purse, where the purse is not in the car at the time of the search, but rather is on the passenger's person and the passenger is outside the car).

[¶ 20]    A purse, like a billfold, is such a personal item that it logically carries for its owner a heightened expectation of privacy, much like the clothing the person is wearing. We are, therefore, persuaded by the foregoing court decisions that the Fourth Amendment is violated when an officer directs that a purse be left in the vehicle and then proceeds to search the purse incident to the arrest of another passenger in the vehicle.

[¶ 21]    We conclude the factual issue whether Officer Wahl instructed Tognotti to leave her purse in the vehicle or whether she voluntarily left it there when the officer asked her to exit the vehicle is both relevant and dispositive of the motion to suppress evidence in this case. If the officer did not instruct Tognotti to leave the purse in the vehicle, he was entitled to search it incident to the arrest of passenger, Decoteau. If, however, Officer Wahl instructed Tognotti to leave the purse in the vehicle, her Fourth Amendment rights against unreasonable search and seizure would preclude him from searching the purse incident to Decoteau's arrest. Un-

der that circumstance, the motion to suppress should be granted.

[¶ 22]    In its December 30, 2002, order granting the motion to suppress, the trial court found, "Ms. Tognotti left her purse on the driver's seat, at the officer's direction." That finding, on the record before the court, however, is without any evidentiary support. We conclude that finding is against the manifest weight of the evidence and is not supported by sufficient competent evidence. Consequently, we reverse the court's order granting the motion to suppress, and we remand with instructions that the court hold a limited evidentiary hearing on this relevant fact issue and make a redetermination on the motion.

[¶ 23]    The order is reversed and the case is remanded.

[¶ 24] GERALD W. VANDE WALLE, C.J., CAROL RONNING KAPSNER, WILLIAM A. NEUMANN, and DALE V. SANDSTROM, JJ., concur.