[Cite as *State v. Raslovsky*, 2020-Ohio-515.]

**IN THE COURT OF APPEALS OF OHIO
SECOND APPELLATE DISTRICT
CLARK COUNTY**

| | | |
|---|---|---|
| STATE OF OHIO | : | |
| | : | |
| Plaintiff-Appellee | : | Appellate Case No. 2019-CA-55 |
| | : | |
| v. | : | Trial Court Case No. 2018-CR-720 |
| | : | |
| STEPHANIE RASLOVSKY | : | (Criminal Appeal from |
| | : | Common Pleas Court) |
| Defendant-Appellant | : | |
| | : | |

. . . . . . . . . . .

O P I N I O N

Rendered on the 14th day of February, 2020.

. . . . . . . . . . .

JOHN M. LINTZ, Atty. Reg. No. 0097715, Clark County Prosecutor's Office, Appellate Division, 50 E. Columbia Street, Suite 449, Springfield, Ohio 45502
      Attorney for Plaintiff-Appellee

SARA M. BARRY, Atty. Reg. No. 0090909, 1139 Holly Avenue, Dayton, Ohio 45410
      Attorney for Defendant-Appellant

. . . . . . . . . . . .

HALL, J.

{¶ 1} Stephanie Raslovsky appeals from her conviction for possession of cocaine. Finding no error, we affirm.

## I. Facts and Procedural History

{¶ 2} One evening in June 2018, a group of Springfield police officers were working as part of a task force formed to look for suspected drug activity. Two officers were watching a particular city street in an unmarked vehicle, investigating complaints of drug activity. Around 9:15 p.m., a vehicle stopped on the street they were watching and left a few minutes later. The officers could not tell if the vehicle had stopped at one of the suspected houses. They followed the vehicle for several blocks and eventually saw it fail to signal a turn. The officers radioed Officer Derrick Nichols, a drug canine officer, who proceeded to stop the vehicle for the turn-signal violation.

{¶ 3} Officer Nichols approached the vehicle on foot and saw a driver and three passengers. Nichols began speaking with the driver. Other officers soon arrived and spoke with the passengers. Officer Nichols had the driver step out of the vehicle, which she did, taking her purse. The driver consented to a search of her purse, and Nichols found no contraband inside. The driver also consented to a search of the vehicle.

{¶ 4} The officers decided to deploy the drug dog and asked the occupants to get out of the vehicle. What happened next is not entirely clear from the trial court's decision, perhaps because neither party focused on whether the location or circumstances of Raslovsky's purse mattered. The decision indicates "the defendant exited with her purse, but Officer Nichols either placed it back into the vehicle or instructed her to do so." But the specific testimony and the audio/video recording (State's Exhibit 2) of the stop provided a different perspective.   The defense called Raslovsky as a witness but did not

inquire about the purse, its location, or what Raslovsky did with it. On cross-examination, the State asked whether she remembered "where the purse was in the driver passenger (sic) seat?" She answered "[w]hen I got out of the vehicle and I picked my purse up to get out and they took it from me and put it back in, I'm not sure where they placed it at." (T. 52) But this description is not entirely consistent with the audio-video evidence, which showed that Officer Lish, not Nichols, had been standing outside the closed passenger side door, apparently talking with Raslovsky, before the decision was made to empty the vehicle for the dog deployment. The audio recording, which was only from Officer Nichols's microphone, did not pick up Officer Lish's conversation on the passenger side of the vehicle at this time. But Officer Lish clearly opened the passenger door for Raslovsky to get out at about 9:32:57.[1] Officer Lish apparently told her to leave the purse, because at the time she exited she did not have a purse with her, the officer was standing back at door-length from the vehicle, he did not appear to take anything from her, and he did not reach into the vehicle to place something back into the vehicle. He entered the vehicle only after the doors were closed and the dog "hit" on the passenger side door. The conclusions that Raslovsky did not exit with her purse and that the officer did not take it from her and return it to the vehicle were confirmed by Raslovsky's own statement to Lish, after the beginning of the search: Lish asked "Stephanie," who was outside the car, about the purse at 9:35:22; she approached the car and, beginning at 9:35:27;10, she said, "I tried to take my purse and you guys told me to leave it in." Only thereafter can she be heard stating that the police did not have permission to search the purse.

---

[1] The video has 30 frames per second and the timer is divided as hour: minute: second; frame. The player allows frame by frame visualization.

{¶ 5} Regardless, after the dog alerted to the odor of narcotics at the passenger side door, officers searched the inside of the vehicle, including Raslovsky's purse. In the purse, officers found a plastic bag containing white rocks that were believed to be crack cocaine. Upon questioning, Raslovsky admitted that it was crack.

{¶ 6} Raslovsky was arrested and later indicted on one count of possession of cocaine, a fifth-degree felony. She moved to suppress the drugs found in her purse. A suppression hearing was held at which the only witnesses were Officer Nichols, a police dispatcher, and Raslovsky herself. Officer Lish did not testify. Afterwards, the trial court overruled the motion to suppress, concluding that the stop, Raslovsky's removal from the vehicle, the dog sniff, the search of the vehicle, and the search of Raslovsky's purse were all lawful. Raslovsky pleaded no contest to the possession charge and was sentenced to ten months in prison with optional post-release control of three years.

{¶ 7} Raslovsky appeals.

## II. Analysis

{¶ 8} The sole assignment of error alleges that the trial court erred by denying Raslovsky's motion to suppress. Raslovsky argues that the driver's consent to search the vehicle did not give officers the right to search her purse. She also argues that the Fourth Amendment's automobile exception did not justify the search of her purse.

{¶ 9} Appellate review of a motion to suppress presents a mixed question of law and fact. *State v. Burnside*, 100 Ohio St.3d 152, 2003-Ohio-5372, 797 N.E.2d 71, ¶ 8. An appellate court accepts the trial court's findings of fact if they are supported by competent, credible evidence. *Id.* "Accepting these facts as true, the appellate court must then independently determine, without deference to the conclusion of the trial court, whether

the facts satisfy the applicable legal standard." *Id*.

## A. Search based on consent to search the vehicle

{¶ 10} Raslovsky first argues that the driver's consent to search the vehicle did not extend to a search of her purse. Raslovsky is correct, and that is consistent with the trial court's conclusion: "The Court finds that Officer Nichols was not authorized to search the defendant's purse under the voluntary consent exception to the warrant requirement because the driver's consent to a search of the vehicle's passenger compartment did not extend to it." Indeed, Raslovsky admits in her brief that this was the court's conclusion: "the trial court explicitly agreed that Officer Nichols was not authorized to search Appellant's purse under the voluntary consent exception to the warrant requirement." The state also agrees: "The State concurs that the search of the purse could not be justified by the driver's permission to search the vehicle."

{¶ 11} Since all are in agreement that the driver's consent did not extend to a search of the passenger's purse, we see little point in further discussing that issue.

## B. Search based on automobile exception

{¶ 12} Raslovsky also argues that the automobile exception to the Fourth Amendment's warrant requirement did not give officers the right to search her purse.

{¶ 13} The Fourth Amendment protects "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures." But the automobile exception allows "a warrantless search of an automobile stopped by police officers who had probable cause to believe the vehicle contained contraband." *United States v. Ross*, 456 U.S. 798, 799, 102 S.Ct. 2157, 72 L.Ed.2d 572 (1982), citing *Carroll v. United States*, 267 U.S. 132, 45 S.Ct. 280, 69 L.Ed. 543 (1924). As to the scope

of the automobile-exception search, "[i]f probable cause justifies the search of a lawfully stopped vehicle, it justifies the search of every part of the vehicle and its contents that may conceal the object of the search." *Id.* at 825. The U.S. Supreme Court held in *Wyoming v. Houghton*, 526 U.S. 295, 307, 119 S.Ct. 1297, 143 L.Ed.2d 408 (1999), that this includes "passengers' belongings found in the car that are capable of concealing the object of the search."

{¶ 14} Here, the dog sniff around the vehicle's exterior was lawful. *See Illinois v. Caballes*, 543 U.S. 405, 409, 125 S.Ct. 834, 160 L.Ed.2d 842 (2005) (holding that a dog sniff on the exterior of a vehicle does not constitute a search). The dog's subsequent alert to the vehicle triggered the automobile exception, giving the officers probable cause to believe that the vehicle contained drugs and allowing the officers to search the vehicle's interior. *See Florida v. Harris*, 568 U.S. 237, 250, 133 S.Ct. 1050, 185 L.Ed.2d 61 (2013) (holding that a dog's alert to a vehicle constituted probable cause to search it for drugs). The permissible search extends to "passengers' belongings found in the car that are capable of concealing the object of the search." *Houghton* at 307. The discrete question is whether this included Raslovsky's purse.

{¶ 15} Raslovsky argues that when a purse is being worn or held, it is not merely an object but is part of the owner's person, making the expectation of privacy greater. As such, she contends, the rules that apply to the search of a person apply to the purse; it cannot be searched unless the owner is arrested or there is probable cause to believe that the purse contains contraband.

{¶ 16} Justice Breyer appears to agree with this argument in his concurring opinion in *Houghton*. There he said that "[p]urses are special containers. They are repositories of

especially personal items that people generally like to keep with them at all times." *Houghton*, 526 U.S. at 308, 119 S.Ct. 1297, 143 L.Ed.2d 408 (Breyer, J., concurring). He wrote that "it would matter if a woman's purse, like a man's billfold, were attached to her person. It might then amount to a kind of 'outer clothing,' which under the Court's cases would properly receive increased protection." (Citations omitted.) *Id.* But this was not an issue in *Houghton* because the purse in that case was found separate from the owner, having been left voluntarily in the backseat.

{¶ 17} The issue has come before courts in other jurisdictions. The Kansas Supreme Court addressed the issue in *State v. Boyd*, 275 Kan. 271, 64 P.3d 419 (2003). In *Boyd*, a police officer ordered the defendant out of the vehicle, and when she grabbed her purse, the officer ordered her to leave the purse in the vehicle. The court, relying in part on Justice Breyer's *Houghton* concurrence, concluded that unless there is an arrest or probable cause sufficient to support a search, a woman's purse in her possession or under her control constitutes part of her person and is not subject to search. The Kansas court held that "where a passenger is told by a police officer to get out of a lawfully stopped vehicle and in response to the officer's order to leave her purse in the vehicle, puts the purse down and exits the vehicle, a subsequent search of the purse as part of a search of the vehicle violates the passenger's Fourth Amendment right against unreasonable search and seizure." *Id.* at 283.

{¶ 18} The North Dakota Supreme Court has held similarly. That court, also considering *Houghton*, said that "[a] purse, like a billfold, is such a personal item that it logically carries for its owner a heightened expectation of privacy, much like the clothing the person is wearing. We are, therefore, persuaded * * * that the Fourth Amendment is

violated when an officer directs that a purse be left in the vehicle and then proceeds to search the purse incident to the arrest of another passenger in the vehicle." *State v. Tognotti*, 2003 ND 99, 663 N.W.2d 642, ¶ 20. But the South Dakota Supreme Court has disagreed. It has held that police may order a woman to leave her purse in a vehicle and that officers have the same authority to search the purse as they would other containers found in the vehicle. *State v. Steele*, 2000 SD 78, 613 N.W.2d 825, ¶ 19.

{¶ 19} The issue came before the Ohio Supreme Court in *State v. Mercier*, 117 Ohio St.3d 1253, 2008-Ohio-1429, 885 N.E.2d 942. In that case, the defendant was a passenger in the stopped vehicle, holding her purse on her lap. A police officer ordered her out and told her to leave the purse in the vehicle. An officer later searched the purse under the automobile exception. The appellate court had found that the search did not violate the Fourth Amendment. In a one-sentence opinion, the Supreme Court affirmed the court of appeals judgment, by a five-to-two vote, without elaboration except to say the holding was "affirmed on the authority of *Wyoming v. Houghton."* Justice Lanzinger wrote a dissent joined by Justice Pfeifer. She urged that the search of the purse constituted an impermissible search of the defendant's person. In support, she cited Justice Breyer's *Houghton* concurrence, *Boyd*, and other cases to conclude: "I would hold that unless probable cause exists for an arrest of the person, law enforcement officers may not instruct an innocent passenger to leave a purse behind in a vehicle so that it may be searched." *Id.* at ¶ 12 (Lanzinger, J., dissenting).

{¶ 20} From the appellate court's decision in *Mercier*, we learn that Mercier had argued what Justice Lanzinger would have held: that because the purse was on her lap when the car was stopped, it was attached to her person, so it could not have been

searched without particularized probable cause to search her person. The defendant further argued that the officer "could not have created a right to search her purse by ordering her to leave it in the car," citing *Boyd* and other cases. *State v. Mercier*, 1st Dist. Hamilton No. C-060490, 2007-Ohio-2017, ¶ 16. The appellate court considered Justice Breyer's *Houghton* concurrence but ultimately held that *Houghton* authorized the search. "In *Houghton*," said the court, "the Court pointed out that passengers have a reduced expectation of privacy in regard to personal property transported in an automobile. The *Houghton* Court emphasized that the location of the property in the automobile is the important factor and not the ownership of the property. We find no reason to exempt Mercier's purse from this rule." *Id.* at ¶ 18.

{¶ 21} We addressed this issue too, in *State v. Caulfield*, 2013-Ohio-3029, 995 N.E.2d 941 (2d Dist.). There, the defendant was a front-seat passenger in a vehicle stopped for a minor traffic violation. The officer discovered that the driver was under suspension, that he had a prior drug suspension, and that a warrant had been issued for his arrest. The officer arrested the driver, and the driver consented to a search of the vehicle. An officer asked the defendant to exit the vehicle. She carried her purse with her as she got out, but the officer ordered her to leave it in the vehicle, and the purse was searched, along with the interior of the vehicle. We held that the search and seizure of the purse was unlawful because it was not justified based on the driver's consent to search the vehicle, *id.* at ¶ 25, and because the search-incident-to-arrest of the driver exception to the warrant requirement did not apply to the vehicle, *id.* at ¶ 34. Only after holding that the search was unlawful, because neither the driver's consent nor search-incident-to-arrest of the driver extended to the passenger's purse, did we go on to opine

that "[e]ven if the search incident to arrest exception had applied, the search of Caulfield's purse would still be unlawful, since the trial court found that the officer ordered Caulfield to leave her purse in the vehicle without having probable cause to believe that there was contraband in the vehicle." *Id.* at ¶ 35. We discussed the Kansas Supreme Court's decision in *Boyd* and concluded that, like the officers in *Boyd*, the officer in *Caulfield* did not have probable cause to believe there was contraband in the vehicle when he ordered the defendant to leave her purse. We concluded that, even if the search-incident-to-arrest exception applied, based on *Boyd,* the search of the purse would still have been unlawful.

{¶ 22} In *Mercier,* the Ohio Supreme Court had a clear opportunity to adopt a different rule for held or carried purses, a rule like the one that Raslovksy urges us to apply. But the Court declined to do so, holding instead that purses in those circumstances are still subject to search under *Houghton*. We think that *Caulfield*'s discussion of the issue is unpersuasive because *Caulfield* did not consider or address *Mercier*'s implicit rejection of *Boyd*. Anyway, the *Caulfield* discussion, although related to our analysis, is not the holding of the case because the *Caufield* holding, which we recognize and apply, is that the passenger's purse could not be lawfully searched based on the driver's consent or the search-incident-to-arrest exception.

{¶ 23} Lastly, we note that even if we were to adopt the rule urged by Raslovsky, it would not apply here. Based on the evidence, it appears that Raslovsky was not holding her purse at the time that she was ordered out of the vehicle. According to Officer Nichols, "* * * Officer Lish had Miss Raslovsky exit the vehicle and she grabbed her purse. Officer Lish then told her to leave her purse inside." (T. 29). And although Raslovsky herself testified, "When I got out of the vehicle and I picked my purse up to get out and they took

it from me and put it back in * * *" (T. 52), at the time of the event she was recorded as saying "I tried to take my purse and you guys told me to leave it in." (State's Exhibit 2 at 9:35:27;10). We do not believe the evidence supports a conclusion that Raslovsky was holding the purse at the time of the stop, and we further conclude it is not unreasonable to ask persons momentarily removed from a vehicle for a dog deployment to leave behind property not on their person at the time of the traffic stop.

{¶ 24} As it is, the search of Raslovsky's purse was lawful based on the probable cause arising from the drug dog's alert. While Raslovsky's purse was in the vehicle, probable cause arose that allowed officers to search the interior of the vehicle and containers therein. Accordingly, the trial court was correct in overruling the motion to suppress.

{¶ 25} The sole assignment of error is overruled.

### III. Conclusion

{¶ 26} We have overruled the sole assignment of error presented. The trial court's judgment is affirmed.

. . . . . . . . . . . . .

TUCKER, J., concurs.

FROELICH, J., dissents:

{¶ 27} I would conclude that the police officers did not lawfully require Raslovsky to leave her purse in the vehicle and, consequently, the officers did not lawfully search the purse after the dog's alert.   Accordingly, I dissent.

{¶ 28} Stephanie Raslovsky was the front-seat passenger in a vehicle that was

stopped by Officer Nichols, a uniformed canine handler in a marked cruiser, due to a turn signal violation. Police officers in an unmarked vehicle had followed the car from an area where they had received "some drug complaints," and the officers readily acknowledge that the stop was pretextual. None of the vehicle's occupants had an outstanding warrant.

{¶ 29} The driver and her passengers, including Raslovsky, were removed from the vehicle. Raslovsky left her purse in the vehicle at the officer's instruction. Officer Nichols's dog, Gary, subsequently alerted on the passenger side of the vehicle, which resulted in a search of the vehicle, including Raslovsky's purse. Officer Lish found an illegal drug in the purse.

{¶ 30} Current law generally permits pretextual traffics stops. *See, e.g., Dayton v. Erickson*, 76 Ohio St.3d 3, 11, 665 N.E.2d 1091 (1996). Once a lawful stop has been made, the police may require the driver and any passengers to exit the vehicle pending completion of the traffic stop. *State v. Mobley*, 2d Dist. Montgomery No. 26044, 2014-Ohio-4410, ¶ 13, citing *Pennsylvania v. Mimms*, 434 U.S. 106, 98 S.Ct. 330, 54 L.Ed.2d 331 (1977); *Maryland v. Wilson*, 519 U.S. 408, 117 S.Ct. 882, 137 L.Ed.2d 41 (1997); *State v. Evans*, 67 Ohio St.3d 405, 408, 618 N.E.2d 162 (1993). "Where there is a lawful basis for the stop, ordering an occupant out of the car is proper, even if the officers are not prompted by a reasonable, articulable suspicion of criminal activity." *Mobley* at ¶ 13, citing *Evans* at 408. Moreover, because a dog sniff does not constitute a search, a canine officer may also conduct a free-air sniff of a vehicle without probable cause. *E.g., Kettering v. Maston,* 2d Dist. Montgomery No. 27567, 2018-Ohio-1948, ¶ 19. Current case law indicates that an alert by a drug dog creates probable cause to search the

vehicle for contraband. *See id.*

{¶ 31} Even ignoring developing areas of the law dealing with dog sniffs, *see, e.g.,* Phipps, *Probable Cause on a Leash*, 23 B.U.Pub.Int.L.J. 57 (2014), including developments regarding alerts for previously-illegal substances, there was no testimony concerning this dog's history or the training and qualifications of either the dog or his handler. But neither the motion to suppress nor any facts or argument at trial "alerted" the trial court to these issues, which were therefore waived. *E.g., State v. Matthews*, 2d Dist. Miami No. 2014-CA-23, 2015-Ohio-1750, ¶ 29 (defendant waived any argument regarding the dog's or handler's qualifications for purposes of appeal by failing to raise these issues in his motion to suppress and failing to object at the suppression hearing to the officer's testimony about the use of the dog to establish probable cause to search the vehicle).

{¶ 32} Regardless, I would conclude, on the facts before us, that the officer had no authority to instruct Raslovsky to leave her private property in the vehicle, especially an item so closely associated with a person such as her purse, in the absence of probable cause to search Raslovsky or the vehicle in which she was seated.

{¶ 33} We commented on a similar situation in *Caulfield*, 2013-Ohio-3029, 995 N.E.2d 941 (2d Dist.). In that case, a deputy stopped a vehicle after observing that the license plate was completely obscured by snow. The deputy arrested the driver on an active warrant; the driver then gave consent for a search of the vehicle. The deputy asked Caulfield, the front-seat passenger, to exit the vehicle and instructed her to leave her purse in the car. Caulfield's purse then was searched as part of the search of the vehicle. On review, we concluded that the deputies did not lawfully search Caulfield's

purse based on the driver's consent, officer safety, or as a search incident to the driver's lawful arrest.    We further commented:

> Even if the search incident to arrest exception had applied, the search of Caulfield's purse would still be unlawful, since the trial court found that the officer ordered Caulfield to leave her purse in the vehicle *without having probable cause to believe that there was contraband in the vehicle*. Courts in other jurisdictions have held that an officer, without probable cause to believe there is contraband in a vehicle, violates a passenger's Fourth Amendment rights when the officer orders the passenger to leave her purse in the vehicle, and then subsequently searches the purse along with the vehicle. *See State v. Boyd*, 275 Kan. 271, 282, 64 P.3d 419 (2003); *State v. Newsom*, 132 Idaho 698, 700, 979 P.2d 100 (1998); *State v. Tognotti*, 2003 ND 99, 663 N.W.2d 642, ¶ 21.   In other words, " 'the police cannot create a right to search a container by placing it within the passenger compartment of a car or by ordering someone else to place it there for them.' " *Tognotti* at ¶ 19, quoting *State v. Holland*, 135 Idaho 159, 163, 15 P.3d 1167 (2000).

> In *Boyd*, a passenger did not consent to the search of her purse and was ordered to leave her purse in the vehicle during a search of the vehicle based on the driver's consent.   *Boyd* at 272-273, 64 P.3d 419.   At the time the officer ordered the passenger to leave her purse in the vehicle, he did not have probable cause to believe that the vehicle or the purse contained contraband. *Id.* at 283, 64 P.3d 419.   Upon searching the vehicle, the

officer discovered a crack pipe in the console of the vehicle. *Id.* at 272, 64 P.3d 419. Given the discovery of the crack pipe, the officer proceeded to search the passenger's purse. *Id.* at 273, 64 P.3d 419.

The Supreme Court of Kansas determined in *Boyd* "that where a passenger is told by a police officer to get out of a lawfully stopped vehicle and in response to the officer's order to leave her purse in the vehicle, puts the purse down and exits the vehicle, a subsequent search of the purse as part of a search of the vehicle violates the passenger's Fourth Amendment right against unreasonable search and seizure." *Id.* at 283, 64 P.3d 419; *See also Newsom*, 132 Idaho at 700, 979 P.2d 100; *Tognotti*, 2003 ND 99, 663 N.W.2d 642, at ¶ 21.

Like the officers in *Boyd*, Deputy Wright did not have probable cause to believe there was contraband in the vehicle when he ordered Caulfield to leave her purse. Consequently, even if the search incident to arrest exception applied in this case, per *Boyd*, the search of Caulfield's purse would still have been unlawful.

(Emphasis added.) *Caulfield* at ¶ 35-38. I would find *Caulfield* to be persuasive and hold that the trial court erred in concluding that the search of Raslovsky's purse was lawful.

**{¶ 34}** The majority opinion does not agree with our analysis in *Caulfield* because *Caulfield* failed to discuss the Ohio Supreme Court's apparent rejection of *Boyd* in *State v. Mercier*, 117 Ohio St.3d 1253, 2008-Ohio-1429, 885 N.E.2d 942, which was rendered five years before *Caulfield*.

**{¶ 35}** However, the facts in *Mercier* are distinguishable from those before us. In

*Mercier*, police officers observed Charles Hagedorn, the driver of a vehicle in which Mercier was the front-seat passenger, exit his vehicle, conduct a drug transaction, re-enter his vehicle, and drive away. The officers stopped Hagedorn's vehicle one to two minutes after the sale. Upon questioning, Hagedorn admitted that he had marijuana in the vehicle, and he gave the officer marijuana from a middle console. The police removed Hagedorn from the vehicle, patted him down, and recovered money and rolling papers.

{¶ 36} At this juncture, with Mercier still seated in the front passenger seat with her purse, the police had probable cause to believe that the vehicle contained contraband. The police then removed Mercier from the vehicle; at the officer's instruction, Mercier left her purse on the front seat. The police searched Mercier's purse, finding contraband in an Advil bottle within.

{¶ 37} In concluding that the search of Mercier's purse was lawful, the First District initially held that, "when a police officer has made a lawful custodial arrest of the occupant of an automobile, the officer may, as a contemporaneous incident of that arrest, search the passenger compartment of that automobile." *Mercier*, 1st Dist. Hamilton No. C-060490, 2007-Ohio-2017, ¶ 12, citing *New York v. Belton*, 453 U.S. 454, 101 S.Ct. 2860, 69 L.Ed.2d 768 (1981). Citing *Houghton*, 526 U.S. 295, 119 S.Ct. 1297, 143 L.Ed.2d 408, the appellate court next discussed that police officers with probable cause to search a car may search a passenger's belongings found in the car that could conceal the object of the search. *Mercier* at ¶ 14-15. Reading the cases together, the First District concluded that Mercier's purse, which was within reach of Hagedorn when he was arrested, was lawfully searched. The court stated, in part:

In *Belton*, the Court held that when the driver of a car is arrested, the area within his immediate control includes the passenger compartment of the car and any containers found there. The *Belton* Court defined container as "any object capable of holding another object." Mercier's purse, in the front seat of the car and inches away from Hagedorn, fit the *Belton* definition. The purposes of the *Belton* rule are to protect police officers and preserve evidence. If Mercier had been allowed to remove her purse prior to the search of Hagedorn's car, weapons or contraband could have been hidden from police, and the purposes of the *Belton* rule would have been nullified.

* * *

(Citations omitted.) *Id.* at ¶ 17.

{¶ 38} The Ohio Supreme Court affirmed on the basis of *Houghton*, without opinion.

{¶ 39} In contrast to *Mercier*, the police officers in this case lacked probable cause to believe that the vehicle contained contraband when an officer instructed Raslovsky to exit the vehicle and to leave her purse behind. The vehicle had been stopped for a traffic violated after officers had followed the car from an area where they had received "some drug complaints." The police had not observed any occupant of the vehicle participate in a drug transaction. Unlike *Mercier*, the search of the driver's vehicle was not based on probable cause to believe that drugs were present in the vehicle, and no one was in custody when the dog sniff occurred. The rationales underlying *Belton* and *Houghton*, which formed the basis for the First District's reasoning, are inapplicable here. The Ohio Supreme Court's affirmance of the First District's judgment on the basis of *Houghton* is

equally inapplicable here due to the factual distinctions, and its holding is not inconsistent with *Caulfield*, which, like the case before us, involved a search in the absence of probable cause that there was contraband in the vehicle.

**{¶ 40}** Because I would find *Caulfield* persuasive and *Mercier* distinguishable, I would hold that the search of Raslovsky's purse was unlawful, and that the trial court erred in denying her motion to suppress.

Copies sent to:

John M. Lintz
Sara M. Barry
Hon. Douglas M. Rastatter