OPINION
{¶ 1} Defendant-appellant James Reed, Sr., appeals from the Harrison County Common Pleas Court's denial of his motion to suppress evidence, a .25 caliber firearm and a .22 caliber firearm, found during the search of his automobile. The issue raised in this appeal is whether the search of the vehicle was a search incident to a lawful arrest. Finding that it was, the judgment of the trial court is affirmed.
 STATEMENT OF CASE AND FACTS {¶ 2} On April 24, 2004, at approximately 1:30 a.m., Ohio State Highway Patrolman Edward Pfouts initiated a traffic stop on Reed's car. (Tr. 2, 4, 12, 29, 51). Raye Ann Miller (aka Raye Ann Newell) was driving the car; Reed was in the front passenger's seat. (Tr. 2-4). The car was traveling on County Road 5 in Harrison County, Ohio. (Tr. 3). The reason for the stop was marked lane violations. (Tr. 3). Sergeant Christopher L. Johnson, another Ohio State Highway Patrolman, arrived within seconds of the stop as backup for Trooper Pfouts.
 {¶ 3} Upon approaching the car, Trooper Pfouts asked to see Miller's driver's license, registration and proof of insurance. (Tr. 4). While doing this, Trooper Pfouts noticed indicators that Miller had been consuming alcohol — glassy, bloodshot eyes and strong odor of alcohol. (Tr. 4-5). He asked her to exit the vehicle and proceed back to his patrol car where he began to administer field sobriety tests and the portable breathalyzer. (Tr. 5). The field sobriety tests and portable breath test provided Trooper Pfouts with enough indicators to take Miller in for a BAC DataMaster Breathalyzer test. (Tr. 5). As such, she was arrested for OVI. (Tr. 5). Trooper Pfouts then secured Miller in his cruiser and immediately returned to Reed's car to search it. (Tr. 5).
 {¶ 4} During this time, which was approximately 10-15 minutes, Sergeant Johnson remained in front of Reed's car, watching Reed. (Tr. 31, 53). Once Trooper Pfouts arrived back at the car, Reed was asked to exit the vehicle, which he did willingly. (Tr. 5, 41). Trooper Pfouts then performed a search of the passenger compartment of the vehicle. (Tr. 5-6, 32). Two loaded guns were found during the search, a .25 caliber automatic in the glove box and a .22 caliber revolver in Reed's open backpack behind the driver's seat. (Tr. 6). Reed admitted to owning the guns. He was then asked to produce a carry concealed weapon permit, which he acknowledged that he did not have. (Tr. 6, 72).
 {¶ 5} Reed was arrested and charged with carrying a concealed weapon in violation of R.C. 2923.12. Reed entered a not guilty plea. Thereafter, Reed moved to suppress the evidence arguing that the search was not a valid "search incident to a lawful arrest." The trial court overruled the motion. (08/18/04 J.E.). On the day of trial, Reed changed his plea to no contest. The trial court found him guilty of violating R.C. 2923.12. (01/05/05 J.E.). He was sentenced to Community Control Sanctions. (03/21/05 J.E.). This timely appeal follows.
 ASSIGNMENT OF ERROR {¶ 6} "THE TRIAL COURT ERRED IN FAILING TO SUPPRESS EVIDENCE UNLAWFULLY SEIZED EVIDENCE [SIC] WITHOUT JUST AND PROBABLE CAUSE IN A WARRANT LESS SEARCH."
 {¶ 7} Appellate review of a ruling on a motion to suppress presents a mixed question of law and fact. State v. Long
(1998), 127 Ohio App.3d 328, 332. At a suppression hearing, the evaluation of evidence and the credibility of witnesses are issues for the trier of fact. State v. Mills (1992),62 Ohio St.3d 357, 366. We are bound to accept the trial court's factual determinations made during the suppression hearing so long as they are supported by competent, credible evidence. State v.Harris (1994), 98 Ohio App.3d 543, 546. Accepting these factual findings as true, an appellate court must then independently determine as a matter of law, without deference to the trial court's conclusion, whether the trial court erred in applying the substantive law to the facts of the case. Id.
 {¶ 8} The pertinent facts in this case are not in dispute. Thus, there is no issue as to the trial court's factual determinations. Instead, the dispute in this case is whether given the facts, was the trial court correct in its determination that this search was a search incident to a lawful arrest.
 {¶ 9} In Ohio, a search incident to a lawful arrest is one of the seven well-established exceptions to the Fourth Amendment warrant requirement. State v. Price (1999),134 Ohio App.3d 464, 467, citing State v. Akron Airport Post No. 8975, Veteransof Foreign Wars of U.S. (1985), 19 Ohio St.3d 49, 51 (stating that six of the warrantless searches are: 1) a search incident to a lawful arrest; 2) consent signifying waiver of constitutional rights; 3) the stop-and-frisk doctrine; 4) hot pursuit; 5) probable cause to search and the presence of exigent circumstances; and, 6) the plain-view doctrine) and Stone v.Stow (1992), 64 Ohio St.3d 156, 164 (adding the seventh exception to warrantless searches as an administrative search). See, also, Chimel v. California (1969), 395 U.S. 752, 762-763. The United States Supreme Court has articulated a bright-line rule regarding automobile searches under the search incident to a lawful arrest exception. New York v. Belton (1981),453 U.S. 454; State v. Murrell, 94 Ohio St.3d 489, 2002-Ohio-1483
(adopting Belton in full and overruling State v. Brown
(1992), 63 Ohio St.3d 349).
 {¶ 10} The Belton Court held that "when a policeman has made a lawful custodial arrest of the occupant of an automobile, he may, as a contemporaneous incident of that arrest, search the passenger compartment of that automobile." Belton,453 U.S. at 460. This search is not only extended to the area that was within the reach of the arrestee, but also to closed containers within that area. Murrell, 94 Ohio St.3d at 491, citing Belton,453 U.S. at 460.
 {¶ 11} In discussing the area within the reach of the arrestee, the Belton Court observed:
 {¶ 12} "While the Chimel case established that a search incident to an arrest may not stray beyond the area within the immediate control of the arrestee, courts have found no workable definition of `the area within the immediate control of the arrestee' when that area arguably includes the interior of an automobile and the arrestee is its recent occupant. Our reading of the cases suggests the generalization that articles inside the relatively narrow compass of the passenger compartment of an automobile are in fact generally, even if not inevitably, within `the area into which an arrestee might reach in order to grab a weapon or evidentiary [item].' Chimel, 395 U.S. at 763. In order to establish the workable rule this category of cases requires, we read Chimel's definition of the limits of the area that may be searched in light of that generalization." Belton,453 U.S. at 460. See, also, Murrell, 94 Ohio St.3d at 492
(citing this section of Belton).
 {¶ 13} Reed argues the search of his vehicle was not a search incident to a lawful arrest as described above. The factors that he believes cause the search to fall outside the limits of the exception are as follows. First, he contends that the 10-15 minute time period that he was permitted to remain in the passenger compartment while the field sobriety tests were being administered on Miller makes the search not contemporaneous to the arrest and, as such, a warrant should have been obtained. Second, he argues that he was not the arrestee and the search could not have been performed. Lastly, he contends that not once during the 10-15 minute time period did he reach for the guns, reach to the area where they were located or fail to cooperate with the troopers. Thus, according to him, there was no fear for officer safety and no reason to search the car. As is explained below, we find these arguments to lack merit.
 {¶ 14} The amount of time that elapsed between Miller exiting Reed's car and being arrested was about 10-15 minutes. During that 10-15 minute interval, Miller was talking to Trooper Pfouts and being subjected to field sobriety tests and the portable breathalyzer. Once these were completed, Miller was arrested. Officer Pfouts then immediately returned to the car to perform the search. Given these facts, Reed's allegation that the search was not contemporaneous to the arrest is false. The search happened immediately after the arrest. Accordingly, Reed's first argument is unsupported, and thus, fails.
 {¶ 15} Likewise, Reed's argument that he was not the arrestee and that a search could not be performed of the vehicle is also unpersuasive. As stated above, the bright-line rule established by Belton is that "when a policeman has made a lawful custodial arrest of the occupant of an automobile, he may, as a contemporaneous incident of that arrest, search the passenger compartment of that automobile." Belton, 453 U.S. at 460. (Emphasis added). Courts have been reluctant to limit the scope of this search where an occupant is arrested, the vehicle is searched and that search produces evidence against another passenger in the vehicle. See State v. Smith (Fla.App. 2Dist. 1995), 662 So.2d 725; Donaldson v. State (Tex.App.-EL Paso Sept. 25, 2003), No 08-02-00291-CR, 2003 WL 22220364.
 {¶ 16} In Smith, Smith was the driver of a vehicle in which the passenger was arrested. After the arrest occurred, a search incident to a lawful arrest was conducted on the vehicle. On the driver's seat was a black bag containing cocaine. Smith was then arrested. Smith moved to suppress the evidence. The trial court granted the motion to suppress. However, on appeal, the Florida Appellate Court reversed the ruling and stated that the dictates of Belton applied. Smith, 662 So.2d 725.
 {¶ 17} It explained that the United States Supreme Court inBelton stated that "when a policeman has made a lawful custodial arrest of the occupant of an automobile." Id. (Emphasis added). It then reasoned that the word occupant is all encompassing and denotes anyone within an automobile, not just the driver. Id. It went further to state:
 {¶ 18} "The Supreme Court in the Belton case has foreclosed the option of determining on a case-by-case basis whether the interior of an automobile is within the scope of a search incident to arrest. We read Belton as establishing a rule applicable to all cases involving the arrest of a recent occupant of an automobile, without regard to the facts in the particularcase." Id. (citations omitted; emphasis in original).
 {¶ 19} Similarly, in Donaldson, Donaldson was a passenger in a car she owned. The car was subject to a pretext police stop. The driver of the vehicle was arrested for an outstanding warrant. The vehicle was then searched incident to the lawful arrest of the driver. The search produced a blue plastic bag containing marijuana. This plastic bag was found under the floorboard where Donaldson's feet were located. Consequently, she was arrested and charged for possession of marijuana.
 {¶ 20} She then moved to suppress the evidence arguing that the Belton holding should be limited. The trial court denied her motion to suppress. The Texas Appellate Court affirmed the trial court's ruling, but expressed its own dissatisfaction withBelton given this situation. Donaldson, No 08-02-00291-CR. It stated:
 {¶ 21} "Appellant submits that where the arrest of the non-owner driver was for an unrelated traffic warrant, we should espouse a new rule of law limiting the application of Belton.
She argues persuasively, that without the requirement of probable cause, there ought to be at least some level of indicia to substantiate police intrusion upon the property and privacy rights of a passenger, especially where there is no reasonable suspicion associated with the passenger. She asserts the Texas constitution recognizes the people's security in their houses and possessions in terms more imperative than the Fourth Amendment. When the police have no fear of weapons, there are no furtive gestures, and the original pretext stop is based on a hunch, can such a search still be `reasonable?' Given the course set by the Court of Criminal Appeals and even this court, precedent requires we respectfully decline appellant's invitation to revisit the issue in this case." Id.
 {¶ 22} Thus, considering all the above, the Belton rule does not limit the vehicular search just because there are passengers in the car. Or, in other words, it does not violate the Fourth Amendment when criminal evidence against the passenger (not the arrestee) was found during the vehicular search incident to arrest. That evidence can legally be used against the passenger to obtain a criminal conviction without violating the Fourth Amendment. Accordingly, the seizure of the guns did not violate Reed's Fourth Amendment protections. While the officers would probably have had no authority to search Reed's person, theBelton rule establishes that once Miller was arrested, a warrantless search of the passenger compartment is allowed, regardless of whether a passenger was also in the car at the time of the arrest. As such, Reed's second argument also lacks merit.
 {¶ 23} Lastly, regarding Reed's argument that he did not reach for the guns for the 10-15 minutes he remained in the car and the officers were not in fear for their safety, it also fails. The Belton rule does not require that the officer must have a safety concern to search the car. Instead, it merely requires that a lawful custodial arrest of the occupant of the car in order for a search to be permitted. Belton,453 U.S. at 460. As the Eleventh Appellate District has recently explained:
 {¶ 24} "A search incident to an arrest is broader in scope than an inventory search. `The authority to search * * * incident to a lawful custodial arrest, while based upon the need to disarm and to discover evidence, does not depend on what a court may later decide was the probability in a particular arrest situation that weapons or evidence would in fact be found upon * * * the suspect. A custodial arrest of a suspect based on probable cause is a reasonable intrusion under the Fourth Amendment; that intrusion being lawful, a search incident to the arrest requires no additional justification.' Belton, 453 U.S. at 461, quotingU.S. v. Robinson (1973), 414 U.S. 218, 235." State v.Schultz, 11th Dist. No. 2003-L-156, 2005-Ohio-345.
 {¶ 25} Consequently, the officer's fear or lack thereof is not a factor to consider whether the search was unlawful. Hence, the third argument fails.
 {¶ 26} In conclusion, Reed's arguments fail. The Belton
rule is straightforward; when an occupant of a vehicle is arrested, the passenger compartment of the vehicle can be searched lawfully without a search warrant and any evidence obtained in that search does not violate the Fourth Amendment. Miller was an occupant of the vehicle. She was lawfully arrested. The car was then searched. This search produced loaded guns that were admittedly Reed's, who was a passenger in the vehicle at that time. Thus, the search and subsequent seizure of the guns did not violate Reed's Fourth Amendment right against unlawful searches and seizures. Consequently, the guns could be used against him to prove the carrying a concealed weapon charge.
 {¶ 27} For the foregoing reasons, the judgment of the trial is hereby affirmed.
Donofrio, P.J., concurs.
DeGenaro, J., concurs.