DECISION. *Page 2 
{¶ 1} Defendant-appellant Laura Mercier was indicted for and pleaded not guilty to aggravated drug possession, in violation of R.C.2925.11(A). She filed a motion to suppress evidence, which the trial court denied. Mercier changed her plea to no contest, and the trial court found her guilty. The court sentenced Mercier to three years' community control, suspended her driver's license for a year, and imposed a $250 fine. Mercier's sentence was stayed pending appeal.
 {¶ 2} Mercier's sole assignment of error alleges that the trial cout erred in denying her motion to suppress evidence.
 {¶ 3} At the suppression hearing, Madeira Police Lieutenant Chris Zumbiel testified that he had been investigating Charles Hagedorn for drug trafficking. On July 17, 2005, at about 6:40 p.m., Mercier was a passenger in Hagedorn's car. Hagedorn exited from his car, approached the vehicle of a confidential informant, and sold the informant about a half pound of marijuana. Mercier stayed in Hagedorn's car while the sale took place. Hagedorn returned to his car and drove away with Mercier still in the front passenger's seat.
 {¶ 4} Police stopped Hagedorn's car approximately one to two minutes after the sale. Lieutenant Zumbiel questioned Hagedorn, who admitted that there was marijuana in his car. Hagedorn opened a middle console and handed Zumbiel marijuana. Police removed Hagedorn from the car and patted him down, recovering the buy money and some rolling papers. Hagedorn was then placed in a police cruiser. *Page 3 
 {¶ 5} Zumbiel then approached Mercier and removed her from Hagedorn's car. Zumbiel testified that "at that point [Mercier's] purse was left in the front seat. [Mercier] was placed in another cruiser." Zumbiel searched Mercier's purse. He found an Advil bottle, which he opened. The bottle contained four Adderall pills, a form of amphetamine. Zumbiel arrested Mercier. He read Mercier her Miranda rights, which she waived. Mercier told Zumbiel that a friend had given her the drugs, which she used to help her stay awake.
 {¶ 6} Zumbiel testified that Mercier was removed from Hagedorn's car because police were going to seize the vehicle for possible forfeiture. Zumbiel stated that Mercier's purse was searched because police were doing an "impound inventory" of the car, and pursuant to Madeira police procedures "all containers, everything [was to be] searched and inventoried." Zumbiel explained that it was standard written procedure of Madeira police to remove and inventory all items from a vehicle that was going to be impounded.
 {¶ 7} Zumbiel also testified that Mercier's purse was searched because police thought there was a possibility that it contained illegal drugs due to Mercier's proximity to Hagedorn's drug deal. In addition, Zumbiel stated that, to ensure the safety of the police officers, he would have searched the purse for a weapon before he returned it to Mercier. Zumbiel testified that he did not remember patting Mercier down. He stated that he typically called for a female officer to pat down female suspects. Zumbiel stated that another officer on the scene could have checked Mercier for weapons. Zumbiel testifed that Mercier was already in a police cruiser when he searched her purse. *Page 4 
 {¶ 8} On cross-examination, Zumbiel testified that Mercier was not a suspect when police stopped Hagedorn's car. He also testified that when he approached Hagedorn's car, Mercier had her purse "on her person" and that Mercier left her purse on the front seat only because Zumbiel had asked her to exit from the car and leave the purse behind.
 {¶ 9} Mercier argued that because she had her purse sitting on her lap when police stopped Hagedorn's car, it was part of her person, and, therefore, police had to show probable cause to search it. The state argued that police were justified in searching the purse because it was part of the inventory of the car, they had probable cause to believe that it contained illegal drugs due to Mercier's proximity to Hagedorn's drug sale, and they had the right to search the purse for weapons to ensure their safety.
 {¶ 10} On appeal, Mercier raises two issues for our review. She first argues that a purse worn or carried by a passenger in a car cannot be searched if the passenger is not subject to search. She also argues that, even if her purse was subject to a search, police exceeded the permissible scope of the search by opening the Advil bottle.
 {¶ 11} In defining the scope of a search incident to an arrest, the United States Supreme Court held in Chimel v. California[1] that a police officer making a lawful custodial arrest may search the arrestee and the area within the arrestee's immediate control to ensure that no weapons are present and to prevent the destruction or concealment of evidence. The Court applied the Chimel rule to automobile searches inNew York v. Belton[2] and held that a police officer making a *Page 5 
lawful custodial arrest of the driver of an automobile may search the passenger compartment of the car and any containers found there, whether the containers are open or closed. The Court defined "container" as "any object capable of holding another object," including "closed or open glove compartments, consoles, or other receptacles located anywhere within the passenger compartment, as well as luggage, boxes, bags, clothing, and the like."[3] The purposes of the Belton rule are to protect police officers and preserve evidence.[4] The Belton Court did not limit the scope of the permissible search to containers that might conceal weapons or evidence. The Court, stating that a "single familiar standard" was "essential to guide police officers," drew a bright-line rule that allows police to search all containers found within the passenger compartment of the vehicle.[5] A search of the entire passenger compartment is justified because it "generally, even if not inevitably" is within the arrestee's immediate control.[6] If the passenger compartment is within the arrestee's reach, so are any containers found there.[7] "The authority to search * * * incident to a lawful custodial arrest, while based upon the need to disarm and discover evidence, does not depend on what a court may later decide was the probability in a particular arrest situation that weapons or evidence would in fact be found[.]"[8] A police officer's actual fear or lack of fear is not to be a consideration in determining whether the search was lawful.[9] *Page 6 
 {¶ 12} In State v. Murrell,[10] the Ohio Supreme Court adopted theBelton rule in addressing the protection against unreasonable searches contained in Section 14, Article I of the Ohio Constitution, stating, "The Belton court reached a calculated conclusion that a search of the motor vehicle incident to arrest in this situtation is a reasonable one, justified principally by concerns for officer safety and preserving evidence, and the advantages of having a bright-line rule in such situations. * * * Consistent with Belton, we hold that when a police officer has made a lawful custodial arrest of the occupant of an automobile, the officer may, as a contemporaneous incident of that arrest, search the passenger compartment of that automobile." Therefore, the protection afforded Mercier in this case against unreasonable searches and seizures found in Section 14, Article I of the Ohio Constitution was coextensive with that found in the Fourth Amendment to the United States Constitution.[11]
 {¶ 13} In Wyoming v. Houghton,[12] the United States Supreme Court held that police officers with probable cause to conduct a warrantless search of an automobile for contraband could search a purse left by a passenger on the back seat of the car. Sandra Houghton was a passenger in a car that was stopped by police for speeding and displaying a faulty brake light. The officer saw a hypodermic syringe in the driver's shirt pocket. The driver admitted that he used the the syringe to "take drugs." Based on the driver's admission, the officer searched the car for contraband. The search included Houghton's purse, which was on the back seat of the car. Houghton's purse contained methamphetamines and drug paraphernalia. *Page 7 
 {¶ 14} The Houghton Court held that police officers with probable cause to search a car may search a passenger's belongings found in the car that could conceal the object of the search.[13] The Court determined that passengers, as well as drivers, "possess a reduced expectation of privacy" in regard to items that they transport in automobiles.[14] The heightened protection afforded to a passenger against a search of his or her person does not apply to a search of the passenger's personal property found inside an automobile.[15] The important issue is the location of the container within the automobile, not the ownership of the container.[16] The Houghton Court reasoned that three factors favored allowing the search of a passenger's belongings: the risk of losing evidence due to the mobility of an automobile, the possibility that a passenger may be engaged with the driver in a common criminal endeavor and have a personal interest in concealing contraband, and the chance that a passenger may become an "unwitting accomplice" to the driver's crime if the driver has sought to hide evidence in a passenger's belongings.[17]
 {¶ 15} Justice Breyer stated in his concurring opinion inHoughton that it was important that Houghton had left her purse in the back seat of the car, a "considerable distance" away from her, and that she did not claim ownership of the purse until the officer found her identification inside.[18] Justice Breyer viewed a woman's purse as a "special container" that is a repository "of especially personal items that people generally like to keep with them at all times."[19] If a woman's purse *Page 8 
is "attached to her person," Justice Breyer reasoned, it "might then amount to a kind of `outer clothing'" that would "properly receive increased protection."[20]
 {¶ 16} Mercier argues, citing Houghton, that because her purse was in her lap when Hagedorn's car was stopped, it was "attached to her person," and, therefore, it could not have been searched in the absence of particularized probable cause to search her person. Mercier argues that there was no probable cause to search her purse because she was not suspected of any criminal activity, and police had no reason to believe that she was armed. Further, Mercier argues that Zumbiel could not have created a right to search her purse by ordering her to leave it in the car.[21]
 {¶ 17} In Belton, the Court held that when the driver of a car is arrested, the area within his immediate control includes the passenger compartment of the car and any containers found there.[22] TheBelton Court defined container as "any object capable of holding another object."[23] Mercier's purse, in the front seat of the car and inches away from Hagedorn, fit the Belton definition. The purposes of theBelton rule are to protect police officers and preserve evidence. If Mercier had been allowed to remove her purse prior to the search of Hagedorn's car, weapons or contraband could have been hidden from police, and the purposes of the Belton rule would have been nullified.[24] If the right of police to search a passenger's purse depended upon its location in the car, the bright-line rule that theBelton Court sought to establish to "guide police officers" would be blurred.[25] Would police be permitted to search a *Page 9 
purse that was on a passenger's lap, over her shoulder, between her feet, on the floor near her feet, hanging from the back of her seat, or in some other location? Answering these fact-specific questions would require "precisely the sort of ad hoc determinations on the part of officers in the field and reviewing courts that Belton sought to avoid."[26] We do not believe that a passenger should be able to thwart a search by grabbing her purse and holding it when a car is stopped by police. In our view, the Belton rule did not permit Mercier to alter the facts presented to police at the time the search was triggered by attempting to remove her purse.[27]
 {¶ 18} In Houghton, the Court pointed out that passengers have a reduced expectation of privacy in regard to personal property transported in an automobile. The Houghton Court emphasized that the location of the property in the automobile is the important factor and not the ownership of the property. We find no reason to exempt Mercier's purse from this rule. Further, the Houghton factors that favor allowing a search of a passenger's belongings — the risk of losing evidence due to the mobility of an automobile, the possibility of a common criminal enterprise involving the driver and his passenger, and the chance that a passenger might become an "unwitting accomplice" to the driver's crime — certainly applied to Mercier's purse. Police knew that Hagedorn had conducted a drug deal, that Mercier had waited in the car during the deal, that Mercier and her purse were in the front seat of the car inches away from Hagedorn just minutes after the deal, and that Hagedorn had more drugs hidden in the car's console. It was not a stretch for police to believe that Mercier's purse might have contained contraband or evidence. As the Ohio Supreme *Page 10 
Court pointed out in State v. Moore,[28] "marijuana and other narcotics are easily and quickly hidden or destroyed." The goals ofBelton and Houghton would be thwarted by allowing a passenger such as Mercier to have the discretion to remove a purse, a container large enough to hold weapons or contraband, just prior to a search.[29]
 {¶ 19} We hold that the search of Mercier's purse was lawful and proper. Because Zumbiel had a legal right to search Mercier's purse, he also had a right to ensure that the purse was not removed from the authorized search area by requesting that she leave the purse in the car. Further, we hold that the Advil bottle fell within theBelton-Houghton definition of a container that might have held contraband, and, therefore, that Zumbiel was justified in opening it. The assignment of error is overruled, and the judgment of the trial court is affirmed.
Judgment affirmed. CUNNINGHAM, P.J., and DINKELACKER, J., concur.
RALPH WINKLER, retired, from the First Appellate District, sitting by assignment.
[1] (1969), 395 U.S. 752, 89 S.Ct. 2034.
[2] (1981), 453 U.S. 454, 101 S.Ct. 2860.
[3] See id.
[4] See id.
[5] See id.
[6] See id.
[7] See id.
[8] See id., citing United States v. Robinson (1973), 414 U.S. 218,94 S.Ct. 467
[9] See id.; State v. Reed, 7th Dist. No. 05HA575,2005-Ohio-6791.
[10] 94 Ohio St.3d 489, 2002-Ohio-1483, 764 N.E.2d 986.
[11] See id.
[12] (1999), 526 U.S. 295, 119 S.Ct. 1297.
[13] See id.
[14] See id., citing Cardwell v. Lewis (1974), 417 U.S. 583,94 S.Ct. 2464.
[15] See id.
[16] See id.
[17] See id.
[18] See id. (Breyer, J., concurring).
[19] See id.
[20] See id.
[21] See State v. Tognotti (N.D. 2003), 663 N.W.2d 642; State v.Boyd (2003), 275 Kan. 271, 64 P.3d 419; State v. Newsom (1998), 132 Idaho 698, 979 P.2d 100; State v. Seitz (1997), 86 Wash.App. 865,941 P.2d 5.
[22] See New York v. Belton, supra.
[23] See id.
[24] See State v. Steele (S.D. 2000), 613 N.W.2d 825.
[25] See id.
[26] See Thornton v. United States (2004), 541 U.S. 615,124 S.Ct. 2127.
[27] See State v. Steele, supra.
[28] 90 Ohio St.3d 47, 2000-Ohio-10, 734 N.E.2d 804.
[29] See id. *Page 1