[Cite as *State v. Maston*, 2018-Ohio-1948.]

**IN THE COURT OF APPEALS OF OHIO**
**SECOND APPELLATE DISTRICT**
**MONTGOMERY COUNTY**

| | | |
|---|---|---|
| CITY OF KETTERING | : | |
| | : | |
| Plaintiff-Appellee | : | Appellate Case No. 27567 |
| | : | |
| v. | : | Trial Court Case No. 2016-CRB-677 |
| | : | |
| WILLIAM J. MASTON | : | (Criminal Appeal from |
| | : | Municipal Court) |
| Defendant-Appellant | : | |
| | : | |

. . . . . . . . . . .

O P I N I O N

Rendered on the 18th day of May, 2018.

. . . . . . . . . . .

JOHN D. EVERETT, Atty. Reg. No. 0069911, 2325 Wilmington Pike, Kettering, Ohio 45420
        Attorney for Plaintiff-Appellee

SCOTT N. BLAUVELT, Atty. Reg. No. 0068177, 315 S. Monument Avenue, Hamilton, Ohio 45011
        Attorney for Defendant-Appellant

. . . . . . . . . . . .

FROELICH, J.

{¶ 1} William J. Maston was convicted after a bench trial in the Kettering Municipal Court of possession of a controlled substance (Xanax), a third-degree misdemeanor, and possession of marijuana (less than 100 grams), a minor misdemeanor. For the possession of a controlled substance, the trial court sentenced him to 60 days in jail, of which 54 days were suspended, ordered him to pay a $25 fine and courts costs, and placed him on unsupervised probation for two years. The trial court ordered Maston to pay a $10 fine for possession of marijuana. The trial court stayed Maston's sentences pending appeal.

{¶ 2} Maston raises three issues on appeal: (1) the trial court's denial of his pre-trial motion to suppress; (2) the State's use of a laboratory report in lieu of testimony from the analyst at trial; and (3) ineffective assistance of counsel. For the following reasons, Maston's conviction for possession of a controlled substance will be reversed, and the case will be remanded for further proceedings on that charge. His conviction for possession of marijuana will be affirmed.

## I. Background and Procedural History

{¶ 3} At approximately 2:00 a.m. on March 28, 2016, Maston was a passenger in a vehicle driven by Hannah Tincher. As Tincher was driving on East Dorothy Lane in Kettering, Officer Devin Maloney initiated a traffic stop due to a traffic violation. After back-up arrived, Maloney conducted a free-air sniff by his canine partner, Jax. Jax alerted to an odor of narcotics, and the officer discovered a small amount of marijuana and some Xanax pills in the center console. Maston told the officer that the marijuana belonged to him, but he denied possession of the Xanax pills. Officer Maloney issued

Maston a summons for both the marijuana and Xanax pills.

{¶ 4} Maston moved to suppress the physical evidence against him and the statements he made to the officer. He argued that he was unlawfully detained, that the stop was unlawfully extended by the free-air canine sniff, and that the officer unlawfully searched the vehicle. Maston further claimed that he was entitled to *Miranda* warnings as a result of his detention and that any statements he made were subject to suppression. After a hearing during which Officer Maloney was the sole witness, the trial court overruled Maston's motion to suppress. The court found that (1) Maloney had a reasonable and articulable suspicion of a traffic violation to justify a stop of Tincher's vehicle, (2) the free-air sniff did not extend the length of the traffic stop beyond the normal time required to investigate and complete a traffic stop, and the alert on Tincher's vehicle by the police canine justified the search of the vehicle and Maston's continued detention, and (3) Maston was never "in custody" for purposes of *Miranda*, and there was no right to *Miranda* warnings during the encounter.

{¶ 5} The matter proceeded to a bench trial on March 22, 2017. Officer Maloney was the sole witness for the State. The State also presented a laboratory report identifying the substance of the alleged Xanax pills (State's Exhibit A); the exhibit was admitted over Maston's objection. Maston presented no witnesses, but offered the judgment entry from Tincher's case regarding the marijuana (Defendant's Exhibit 1); Tincher had pled guilty to disorderly conduct. In his closing argument, Maston asserted that the State did not prove beyond a reasonable doubt that he constructively possessed the Xanax pills and, further, that regardless of what he had said at the scene about his ownership of the marijuana, the court should consider Tincher's guilty plea with respect

to his alleged possession of the marijuana. In a written entry dated March 24, 2017, the trial court found Maston guilty of possession of both the marijuana and the Xanax pills.

{¶ 6} Maston appeals from his convictions.

## II. Motion to Suppress

{¶ 7} In his first assignment of error, Maston claims that the trial court erred in overruling his motion to suppress.

{¶ 8} In deciding a motion to suppress, the trial court assumes the role of trier of facts and is in the best position to resolve questions of fact and evaluate the credibility of witnesses. *State v. Pence*, 2d Dist. Clark No. 2013 CA 109, 2014-Ohio-5072, ¶ 7, citing *State v. Hopfer*, 112 Ohio App.3d 521, 548, 679 N.E.2d 321 (2d Dist.1996). The court of appeals must accept the trial court's findings of fact if they are supported by competent, credible evidence in the record. *State v. Isaac*, 2d Dist. Montgomery No. 20662, 2005-Ohio-3733, ¶ 8, citing *State v. Retherford*, 93 Ohio App.3d 586, 639 N.E.2d 498 (2d Dist.1994). Accepting those facts as true, the appellate court must then determine as a matter of law, without deference to the trial court's legal conclusion, whether the applicable legal standard is satisfied. *Id.*

{¶ 9} Officer Maloney's testimony at the suppression hearing established the following facts. At 2:09 a.m. on March 28, 2016, Maloney was driving near 2102 East Dorothy Lane in a marked cruiser with his canine partner, Jax, who is certified to detect heroin, marijuana, methamphetamines, and cocaine. Maloney observed a vehicle in the right lane that he recognized from a residence with a "known drug history." When Maloney moved behind the vehicle, the vehicle switched to the left lane and immediately turned left into a Taco Bell parking lot. Officer Maloney decided to stop the vehicle for a

marked lanes violation.

{¶ 10} Officer Maloney approached the vehicle and saw that Hannah Tincher was the driver and Maston was the front-seat passenger. Maloney was familiar with the couple; he testified that he had been to their residence on several occasions for domestic disputes and that Maston had been arrested on several of those occasions. Maloney asked if he could search the vehicle, but he did not get a clear affirmative response. Maloney called for back-up and then proceeded to look into the couple's "criminal history" and "call history" on Justice Web and to begin writing a traffic ticket. Maloney explained that he ran Tincher's and Maston's identifications and looked to see if Tincher's driver's license was valid and if either person had an outstanding warrant. Officer Anderson arrived at 2:16 a.m., while Officer Maloney was working on the traffic ticket.

{¶ 11} Officer Maloney explained to Officer Anderson why he had called for back-up, and then Officer Maloney conducted a free-air sniff with Jax; Tincher and Maston stood with Officer Anderson while the free-air sniff occurred. As Maloney walked Jax around TIncher's vehicle counter-clockwise, Jax alerted to the presence of illegal drugs. Maloney returned Jax to his cruiser and began to search the interior of Tincher's car. Upon opening the center console, Officer Maloney observed a small baggie of marijuana and a small baggie with 11 Xanax pills.

{¶ 12} After finding the drugs, Officer Maloney walked over to where Officer Anderson was standing with Tincher and Maston. Maloney testified, "Prior to being handcuffed, [Maston] admitted that the marijuana belonged to him, and he denied possession of the Xanax. He mentioned something about his brother or cousin being in the vehicle as a passenger prior to the stop. He said they could have been left in there

by him, at which point Mr. Maston and Mrs. Tincher were both detained until we could figure out the possession of the Xanax." (Supp.Tr. at 15-16.)

{¶ 13} Officer Maloney testified that neither Tincher nor Maston was arrested. He issued a summons for possession of Xanax and a traffic citation for the marked lanes violation to Tincher and issued a summons for possession of Xanax and marijuana to Maston. Maloney did not, at any point, inform Maston of his *Miranda* rights.

{¶ 14} Maston raises two issues on appeal. First, Maston claims that he was unreasonably detained during the stop in order for the officer to conduct a free-air canine sniff and a search of the vehicle. Second, he claims that his statements should have been suppressed, because the officer failed to provide *Miranda* warnings.

{¶ 15} The Fourth Amendment to the United States Constitution protects individuals from unreasonable searches and seizures. *Terry v. Ohio*, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968). Under *Terry*, police officers may briefly stop and/or temporarily detain individuals in order to investigate possible criminal activity if the officers have a reasonable, articulable suspicion that criminal activity may be afoot, including a minor traffic violation. *Id.*; *State v. Mays*, 119 Ohio St.3d 406, 2008-Ohio-4539, 894 N.E.2d 1204, ¶ 7-8.

{¶ 16} Maston does not claim on appeal that the initial stop of Tincher's vehicle was unlawful. Nevertheless, Officer Maloney observed Tincher's vehicle change lanes and immediately turn left into a fast-food restaurant parking lot. The trial court found, and we agree, that Maloney's observations led him to reasonably believe that Tincher had committed a traffic violation, justifying the officer's stop of the vehicle.

{¶ 17} Law enforcement officers may detain the driver and passengers only for the

time necessary to complete the reason for the stop. When a law enforcement officer stops a vehicle for a traffic violation, the officer may detain the motorist for a period of time sufficient to issue the motorist a citation and perform routine procedures, such as a computer check on the motorist's driver's license, registration and vehicle plates. *State v. Thomas*, 2d Dist. Montgomery No. 22833, 2009-Ohio-3520, ¶ 14, citing *State v. Pryor*, 2d Dist. Montgomery No. 20800, 2005-Ohio-2770, ¶ 15.

{¶ 18} "[A] police stop exceeding the time needed to handle the matter for which the stop was made violates the Constitution's shield against unreasonable seizures. A seizure justified only by a police-observed traffic violation, therefore, 'become[s] unlawful if it is prolonged beyond the time reasonably required to complete th[e] mission' of issuing a ticket for the violation." *Rodriguez v. United States*, __ U.S. __, 135 S.Ct. 1609, 1612, 191 L.Ed.2d 492 (2015). *Rodriguez* made clear "that an officer may not prolong a traffic stop to perform a drug sniff even if the 'overall duration of the stop remains reasonable in relation to the duration of other stops involving similar circumstances.' " *State v. Hall*, 2017-Ohio-2682, 90 N.E.3d 276, ¶ 13 (2d Dist.), quoting *Rodriguez*, 135 S.Ct. at 1616.

{¶ 19} A police officer need not have a reasonable suspicion that a vehicle contains contraband prior to summoning a canine drug unit or conducting a canine free air sniff. *Thomas* at ¶ 15. Furthermore, the use of a trained narcotics dog to sniff an automobile does not constitute a "search" under the Fourth Amendment. *Id.*, citing *Pryor* at ¶ 13; *Illinois v. Caballes*, 543 U.S. 405, 125 S.Ct. 834, 160 L.Ed.2d 842 (2005). If a trained canine alerts to the odor of drugs from a lawfully stopped and detained vehicle, an officer has probable cause to search the vehicle for contraband. *State v. Heard*, 2d Dist. Montgomery No. 19323, 2003-Ohio-1047, ¶ 17.

{¶ 20} Here, the vehicle in which Maston was a passenger was stopped by Officer Maloney, who had his canine partner, Jax, in the cruiser. After speaking with Tincher and Maston, Maloney returned to his cruiser, where he ran Tincher's and Maston's identifications through Justice Web. The officer stated that he looked to see if Tincher's driver's license was valid and whether there were any outstanding warrants for Tincher and/or Maston. Maloney also stated that he began to write a traffic citation for Tincher. Maloney had not completed these activities when Officer Anderson arrived at 2:16 a.m., seven minutes after the traffic stop began. Officer Maloney's testimony at the suppression hearing demonstrated that, as required by *Rodriguez*, he diligently performed the tasks necessary to complete the traffic stop until Officer Anderson arrived, at which time he conducted the free-air sniff by Jax.

{¶ 21} Jax alerted on Tincher's vehicle, indicating the possible presence of heroin, cocaine, marijuana, or methamphetamines, i.e., the drugs that Jax was trained to detect. Jax's alert gave Officer Maloney probable cause to search the vehicle. Accordingly, the traffic stop was not unlawfully extended by the search.

{¶ 22} Under the Fifth Amendment to the United States Constitution, no person shall be compelled to be a witness against himself or herself. In order to ensure that this right is protected, statements resulting from custodial interrogations are admissible only after a showing that the procedural safeguards described in *Miranda v. Arizona*, 384 U.S. 436, 444, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966), have been followed. *State v. Earnest*, 2d Dist. Montgomery No. 26646, 2015-Ohio-3913, ¶ 21. Individuals involved in temporary investigatory detentions, such as routine traffic stops, are not "in custody" for purposes of *Miranda*. *Berkemer v. McCarty*, 468 U.S. 420, 104 S.Ct. 3138, 82 L.Ed.2d

317 (1984); *State v. Bizzell*, 2017-Ohio-8902, __ N.E.3d __, ¶ 14 (2d Dist.).

{¶ 23} Although Maston was not free to leave for the duration of the traffic stop, he was not "in custody" when he made the incriminating statements about the drugs. While Officer Maloney searched Tincher's vehicle, Maston and Tincher stood with Officer Anderson on the curb area next to Taco Bell. Officer Maloney testified that, prior to being handcuffed, Maston admitted to ownership of the marijuana, denied possession of the Xanax, and suggested that other individuals who were previously in the vehicle could have left the drugs behind. Officer Maloney testified that Tincher and Maston were then "detained until we could figure out the possession of the Xanax," but he did not ask Maston any questions after Maston was handcuffed. Accordingly, the record reflects that Maston was not in custody when he made statements about the drugs in the vehicle and that there was no custodial interrogation after those statements.

{¶ 24} Maston's first assignment of error is overruled.

## II. The State's Use of the Laboratory Report at Trial

{¶ 25} Maston's second assignment of error states:

The trial court erred to the prejudice of Appellant by permitting admission of a drug analysis report in lieu of actual analyst testimony, in violation of Appellant's right of confrontation under the Sixth Amendment to the United States Constitution.

{¶ 26} The Confrontation Clause of the Sixth Amendment to the United States Constitution prohibits the admission of an out-of-court statement of a witness who does not appear at trial if the statement is testimonial, unless the witness is unavailable and the defendant has had a prior opportunity to cross-examine the witness. *Crawford v.*

*Washington*, 541 U.S. 36, 53-54, 124 S.Ct. 1354, 158 L.Ed.2d 177 (2004); *State v. Maxwell*, 139 Ohio St.3d 12, 2014-Ohio-1019, 9 N.E.3d 930, ¶ 34. A laboratory report stating that forensic analysis has identified a sample as a particular substance is a testimonial statement. *Melendez-Diaz v. Massachusetts*, 557 U.S. 305, 129 S.Ct. 2527, 174 L.Ed.2d 314 (2009); *Bullcoming v. New Mexico*, 564 U.S. 647, 131 S.Ct. 2705, 180 L.Ed.2d 610 (2011).

{¶ 27} Pursuant to R.C. 2925.51, in criminal prosecutions for drug offenses, a laboratory drug analysis report may, under certain circumstances, be used as prima-facie evidence of the identity and weight of the controlled substance. Specifically, R.C. 2925.51(A) provides, in relevant part:

> In any criminal prosecution for a violation of this chapter * * *, a laboratory
>
> report * * *, stating that the substance that is the basis of the alleged offense
>
> has been weighed and analyzed and stating the findings as to the content,
>
> weight, and identity of the substance and that it contains any amount of a
>
> controlled substance and the number and description of unit dosages, is
>
> prima-facie evidence of the content, identity, and weight or the existence
>
> and number of unit dosages of the substance. * * *

A notarized statement by the signer of the report, which must meet certain statutory requirements, must be attached to the report. R.C. 2925.51(A). Further, the report must contain "notice of the right of the accused to demand, and the manner in which the accused shall demand, the testimony of the person signing the report." R.C. 2925.51(D).

{¶ 28} With limited exceptions not relevant here, to use the lab report as evidence, the prosecuting attorney must serve a copy of the report on "the attorney of record for the

accused, or on the accused if the accused has no attorney." R.C. 2925.51(B). If, within seven days of receiving the State's notice of intent to submit the report, the defense demands the testimony of the person who signed the report, the report may not be used as prima-facie evidence of the contents, identity, and weight or the existence and number of unit dosages of the substance. R.C. 2925.51(C). However, "[w]hen the [S]tate has complied with its obligations under R.C. 2925.51, a defendant's failure to use the procedures of R.C. 2925.51(C) to demand that a laboratory analyst testify constitutes a waiver of the opportunity to cross-examine the analyst at trial and allows the analyst's report to be admitted as prima facie evidence of the test results." *State v. Pasqualone*, 121 Ohio St.3d 186, 2009-Ohio-315, 903 N.E.2d 270, paragraph two of the syllabus. *See also State v. Hartman*, 2016-Ohio-2883, 53 N.E.3d 519, ¶ 83 (2d Dist.) ("The U.S. Supreme Court in *Melendez-Diaz*, *supra*, commented that state statutes, such as R.C. 2925.51, do not run afoul of the confrontation clause when the effect of the statute is only to establish the procedural timing of when the right must be exercised.").

{¶ 29} At trial, the State asked the trial court to admit a laboratory report prepared by Michele Taylor, a forensic scientist with the Bureau of Criminal Investigation. The report indicated that she had received an envelope containing 11 white, rectangular, scored tablets marked "XANAX <>2." Upon testing one pill, she found that the pill contained 0.29 grams (+/- 0.04 grams) of Alprazolam.

{¶ 30} Maston objected to the admission of the lab report, stating, "I'll object for the record that I wasn't given notice of the * * * lab report, and the lab technician's not here to testify to the lab report."[1] The prosecutor responded that, according to his records,

---

[1] The record reflects that the clerk mailed a subpoena for Taylor to appear for trial on

the lab report was given to Attorney Andrea Dewar Oladi (a different attorney at the Public Defender's Office) on July 12, 2016.  The trial court allowed the lab report to be admitted.

**{¶ 31}** The record reflects that Maston was represented by attorneys of the Montgomery County Public Defender's Officer throughout the trial court proceedings. The possession of marijuana complaint was filed on March 28, 2016, and Maston, represented by Attorney Dennis Fallang, entered a not-guilty plea, waiver of speedy trial rights, and request for pretrial conference on March 31, 2016.  Attorney Andrea Dewar Oladi was listed as defense counsel on the court's pretrial notice, filed on March 31, 2016, and on May 31, 2016, Oladi filed a motion to suppress on Maston's behalf.

**{¶ 32}** On June 27, 2016, Attorney Molly Stitsinger filed a notice of substitution of counsel in the trial court; the notice indicated that it was "delivered to the Kettering Prosecutor[']s Office on the date same was filed."  On the same date (June 27), Stitsinger filed a request for discovery and a praecipe for a subpoena for Officer Maloney to appear at the suppression hearing.  Stitsinger represented Maston at the October 12, 2016 suppression hearing.  At trial in March 2017, Maston was represented by Attorney Joe Hyde.  It is unclear when Hyde began his representation; his name first appears on a February 21, 2017 notice setting the trial date.

**{¶ 33}** Maston argues that there is no evidence of when a report was served on defense counsel, because the State never filed a notice of intent to use the report in lieu of live testimony.  Maston further argues that, because no notice was filed, the record

_____

March 8, 2017.  However, Maston did not appear for trial on March 8, and the matter was rescheduled for March 22, 2017.  Taylor was not sent a subpoena for the March 22 trial date.

does not establish that defense counsel was served with a report that complied with R.C. 2925.51(A) and (D). We find nothing in R.C. 2925.51 that requires the State to file a notice with the trial court when it serves a copy of the report on a defendant's attorney of record (or on the accused, if no counsel), and Maston has cited no authority to support such a requirement. The prosecutor orally represented to the trial court that a copy of the report was given to Oladi on July 12, 2016, and we find nothing in the record to refute that statement. We note that Maston acknowledges in his appellate brief that State's Exhibit A complied with the requirements of R.C. 2925.51(A) and (D), and there is nothing in the record to suggest that the copy of the report provided to Oladi differed from that exhibit.

{¶ 34} The State argues in its appellate brief that "[t]he lab report was served on one of the three different attorneys for the defendant during the case. All three attorneys work for the public defender's office." However, R.C. 2925.51(B) expressly states that the "prosecuting attorney shall serve a copy of the report *on the attorney of record* for the accused." (Emphasis added.) Although the prosecutor served a copy of the lab report on an attorney with the Public Defender's Office (Oladi) who had previously been counsel for Maston, Stitsinger was counsel of record -- and had been for two weeks, with notice to the prosecutor -- when the prosecutor provided the lab report to Oladi. On this specific record, the prosecutor's service of the report on Oladi failed to comply with the statutory requirement that the prosecutor serve a copy of the report on Maston's counsel of record.[2]

---

[2] The Tenth District has noted that "it is not uncommon for an associate of a firm to appear as substitute counsel on behalf of a partner when that partner is unable to make the court appearance." *Freeman v. Freeman*, 10th Dist. Franklin No. 03AP-85, 2003-Ohio-4959, ¶ 12. And, in *Garcia v. Coler*, 2d Dist. Greene No. 86-CA-36, 1987 WL 12647 (June 11, 1987), we commented that "the use of different attorneys from the same law firm did not

**{¶ 35}** At trial, Maston's attorney did not inform the trial court that Oladi was not counsel of record when she (Oladi) was given a copy of Taylor's report. Nevertheless, because the attorney upon whom the State served a copy of the report was not Maston's counsel of record, the State did not satisfy all of the statutory prerequisites for using the report at trial, and the trial court erred in allowing the State to use Taylor's lab report as prima facie evidence of the content of the alleged Xanax pills.

**{¶ 36}** Maston's second assignment of error is sustained.

### III. Ineffective Assistance of Counsel

**{¶ 37}** In his third assignment of error, Maston claims that his trial counsel rendered ineffective assistance at trial.

**{¶ 38}** We review alleged instances of ineffective assistance of trial counsel under the two-pronged analysis set forth in *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984), and adopted by the Supreme Court of Ohio in *State v. Bradley*, 42 Ohio St.3d 136, 538 N.E.2d 373 (1989). To establish ineffective assistance of counsel, a defendant must demonstrate both that trial counsel's conduct fell below an objective standard of reasonableness and that the errors were serious enough to create a reasonable probability that, but for the errors, the outcome of the case would have been different. *See Strickland* at 688; *Bradley* at 142. Trial counsel is entitled to a strong

result in any discernible prejudice to the appellees." In this case, there is no suggestion that Oladi was acting as substitute counsel for Stitsinger when the prosecutor gave the lab report to her (Oladi). Accordingly, we need not address, and we expressly state no opinion on, whether service on substitute counsel would satisfy R.C. 2925.51(B). Moreover, because Stitsinger filed a notice of substitution with the trial court, we are not faced with the situation where the record fails to indicate who the "attorney of record" within the Public Defender's Office was at the time the lab report was served. We expressly limit our analysis to the situation before us.

presumption that his or her conduct falls within the wide range of reasonable assistance. *Strickland*, 466 U.S. at 688. A defendant is entitled to "reasonable competence" from his or her attorney, not "perfect advocacy." *See Maryland v. Kulbicki*, 136 S.Ct. 2, 5 (2015), citing *Yarborough v. Gentry*, 540 U.S. 1, 8, 124 S.Ct. 1, 157 L.Ed.2d 1 (2003) (per curiam).

{¶ 39} "*Strickland* and its progeny establish that when a court is presented with an ineffective-assistance-of-counsel claim, it should look to the full record presented by the defendant to determine whether the defendant satisfied his [or her] burden to prove deficient performance." *Reeves v. Alabama*, __ U.S. __, 138 S.Ct. 22, 26, 199 L.Ed.2d 341 (2017). Hindsight is not permitted to distort the assessment of what was reasonable in light of counsel's perspective at the time, and a debatable decision concerning trial strategy cannot form the basis of a finding of ineffective assistance of counsel. *State v. Cook*, 65 Ohio St.3d 516, 524-525, 605 N.E.2d 70 (1992); *State v. Fields*, 2017-Ohio-400, 84 N.E.3d 193, ¶ 38 (2d Dist.).

{¶ 40} At trial, Officer Maloney testified that he stopped a vehicle driven by Tincher for a marked lanes violation. Maloney asked Tincher for consent to search the vehicle; she declined. Maloney requested a second unit, and after Officer Anderson arrived, Tincher and Maston, the passenger, were asked to exit the vehicle. Maloney testified that both Tincher and Maston consented to a pat down, in which no contraband was found. Maloney then deployed Jax, his police canine, who alerted on the vehicle. Maloney stated that he and Officer Anderson searched the vehicle, and Maloney located drugs in the center console.

{¶ 41} Officer Maloney testified that the drugs were "both wrapped in plastic baggies [and in] the same type of bag." Maloney stated that the bags were identical –

"the knots were tied the same, the same size bags, basically, they were identical in every way except for the contents, one being marijuana, one being the Xanax pills." When asked what made him think one bag contained marijuana, Maloney responded, "I've seen marijuana hundreds and hundreds of times. A green leafy substance that smelled or had the odor of marijuana to it." He indicated that he believed it was marijuana based on his training and experience. Maloney stated that he believed the pills were Xanax pills when he first saw them, but he also checked the pills through pillidentifier.com.

{¶ 42} Officer Maloney then testified:

Both occupants of the vehicle were placed in handcuffs and separated, detained, and Patrolman Anderson and I began to ask the driver and passenger who the, the marijuana and the pills belongs to. During which the Defendant admitted that the marijuana belonged to him. * * * He denied ownership of the Xanax pills. * * * Both the Defendant and the driver were taken out of handcuffs. The Defendant was issued a summons for possession of marijuana and both the Defendant and the driver, Miss Tincher, were issued summons for possession of the Xanax pills.

(Trial Tr. at 10-11.) There was no testimony that Officer Maloney provided *Miranda* warnings to Maston prior to asking any questions about the drugs.

{¶ 43} Officer Maloney's testimony at trial regarding the timing of Maston's being placed in handcuffs and Maston's statements differed from his testimony at the suppression hearing. As stated above, Officer Maloney testified at the suppression hearing that Maston made statements before being handcuffed and that the officer did not ask Maston any questions after he was "detained." In contrast, Maloney's trial

testimony indicated that Maston had been handcuffed prior to making statements regarding his (Maston's) ownership of the marijuana. Maston thus claims that his attorney rendered ineffective assistance by failing to seek a mistrial or reconsideration of the trial court's suppression decision in light of Officer Maloney's testimony at trial that he questioned Maston after he (Maston) was handcuffed.

{¶ 44} "When a trial court overrules a defendant's motion to suppress evidence, it has the inherent authority to reconsider its ruling at trial." *State v. Hunter*, 2d Dist. Montgomery No. 25164, 2013-Ohio-3459, ¶ 18. In other words, the trial court had the authority to reconsider the admissibility of Maston's statements to Officer Maloney had it been asked to do so.

{¶ 45} We need not decide whether Maston's attorney acted unreasonably in failing to ask the trial court to reconsider the admissibility of Maston's statement regarding his ownership of the marijuana. Even assuming that counsel should have renewed his motion to suppress, we cannot conclude, on this record, that there was a reasonable probability that the outcome of Maston's trial would have been different. Although the officer's testimony at trial may have supported an argument for the suppression of Maston's statements, it is unknown whether the trial court would have credited the officer's testimony at trial over his prior suppression hearing testimony, which undoubtedly would have been brought to the court's attention in response to Maston's renewed suppression motion. And, we can only speculate how Officer Maloney would have responded to any further questions about the discrepancies between his suppression hearing testimony and trial testimony. It is also unknown whether, at a rehearing on the suppression issue, the State or Maston would have called Officer Anderson to testify and

what Officer Anderson's testimony would have been.

{¶ 46} Maston's third assignment of error is overruled.

## IV. Conclusion

{¶ 47} In light of our disposition of Maston's second assignment of error, Maston's conviction for possession of a controlled substance (Xanax) will be reversed, and the matter will be remanded for further proceedings on that charge. Maston's conviction for possession of marijuana will be affirmed.

. . . . . . . . . . . .

DONOVAN, J., concurs.

TUCKER, J., concurring:

{¶ 48} I concur in Judge Froelich's well-reasoned decision. I write separately to note that if the record supported a conclusion that when Oladi was served with the report she was acting as Stitsinger's substitute, I would conclude that the service upon Oladi satisfied R.C. 2925.51(B). Such a conclusion would be consistent with the reality that it is not uncommon for a substitute attorney to appear for the attorney of record, and, in this circumstance, the substitute is acting for the attorney of record so that a transaction with the substitute constitutes a transaction with the attorney of record.

Copies mailed to:

John D. Everett
Scott N. Blauvelt
Hon. James F. Long